PHILIP W. WILKINS, as Administrator of Estate of William Cornelius Wilkins, deceased, GENEVIEVE WILKINS, unmarried, *et al.,* as sole heirs at law of William Cornelius Wilkins, deceased, v. J. S. WILKINS, *et al.*

198 So. 335
Special Division B
Opinion Filed October 18, 1940
Rehearing Denied November 15, 1940

*Philip C. Gorman* and *Philip D. Beall,* for Appellants;

*Harry P. Johnson* and *T. G. Futch,* for Appellees.

PER CURIAM.—The law of this case was enunciated in the opinion in the case of Wilkins v. Wilkins, 141 Fla. 188, 192 Sou. 791, in which we held:

"The appellees should be required to convey to the appellants the real estate remaining vested in them, or either of them, subsequent to January 1, 1931, and should be re-

quired to account for and pay over to the appellants either in kind or the value of all bonds and other personal property which came into the hands of appellees or either of them from W. C. Wilkins or his estate subsequent to January 1, 1931, less such amount as the court below may find to be reasonable and just compensation for services rendered by J. S. Wilkins to W. C. Wilkins under the rule of *quantum meruit,* such allowance being subject to review by this Court."

The mandate of this court was filed in the lower court on January 1, 1940.

On April 20, 1940, the Chancellor entered his findings of fact and a final decree which was recorded April 22, 1940. Petition for rehearing was filed. Also petition for the appointment of a receiver was filed. On May 9, 1940, the petition for receiver was denied and the petition for rehearing was continued.

On July 3, 1940, the court again denied the petition for the appointment of receiver and at the same time filed a new statement of findings of fact and a new final decree.

From the latter order and final decree appeal was taken.

Several questions are presented by the appellants and others are presented by the appellees.

The matter of appointing a receiver is generally held to be within the judicial discretion of the Chancellor and inasmuch as it may have appeared to the chancellor that the entire matter would be disposed of within a very short while after application for appointment of a receiver was made, we cannot say that the chancellor committed reversible error in denying petition for receiver at that time. The reversal of that order could effect no useful purpose as we must assume that when the mandate goes down pursuant to the entry of our present judgment, there will be no further need for a receiver.

We have considered all questions presented and reached the conclusion that there are only two reversible errors apparent in the decree.

It may be that we would not have decided all other questions as did the chancellor, but we find support in the record for the action of the chancellor, except the failure to charge J. S. Wilkins with $2,000.00 shown to have been in his bank account from the proceeds of bonds belonging to W. C. Wilkins which bank account was transferred from the account of J. S. Wilkins to that of his wife before the $2,000.00 was drawn therefrom and which $2,000.00 we think the evidence conclusively shows was drawn from the bank account of Mrs. Wilkins to make partial payment on a certain parcel of land deeded to J. S. Wilkins and Nora N. Wilkins, husband and wife, by D. P. Montgomery and wife, Mary E. Montgomery, conveying lot 4 and the north two feet of lot 3, block C of Citrus Park subdivision of lots 14, 15, 16, 17, 17½, 18, 19 and 19½ north of Main Street, according to the official plat of the City of Leesburg; and refusing to impress a lien upon the said land in favor of appellants for the said sum of $2,000.00; and except further, that the chancellor failed to charge to the account of J. S. Wilkins and to give credit to the appellants for the value of the rentals of the properties decreed to be held in trust by J. S. Wilkins from the time said properties each, respectively, went into possession and control of J. S. Wilkins to date of the final decree.

As to the first error, it is well settled that equity will raise a constructive trust, where one in abusing confidence reposed and accepted, or other questionable means, has gained and holds property for himself that in equity and good conscience should not be allowed to be so withheld from the party imposed upon. See Fickling Properties v.

Smith, 123 Fla. 556, 167 Sou. 42; Jones v. Carpenter, 90 Fla. 407, 106 Sou. 127.

It is also settled that when a trustee commingles trust funds with his own and dissipates a portion of the commingled fund, he will be presumed to have dissipated his own funds first and the remainder of the commingled fund to the extent of the lowest balance remaining at any time subsequent to the commingling will be presumed to contain the trust fund and may be impressed with the trust. Myers v. Matusek, 98 Fla. 1126, 125 Sou. 360. It is elementary that where trust funds are traceable into any particular property in the hands of the trustee, a lien will be impressed upon that property to the extent of the trust fund traced thereto.

The contention is made that because the deed to the property into which the trust fund was traced conveyed the property as an estate by the entireties to J. S. Wilkins and wife, the lien could not be impressed upon that property. The fallacy of this is that the trust was impressed in the very transaction in which the conveyance was acquired and, therefore, J. S. Wilkins and wife took the property as an estate by the entireties impressed with a lien to the extent of the trust fund which went into the payment for that property.

As to the second error referred to, there can be no doubt that where trust property is ordered to be transferred to the *cestui que* trust or the trust otherwise enforced, the *cestui que* trust is ordinarily entitled to recover such rents and profits which the trustee has received, while the property was in his possession and which have not been paid over and this liability on the part of the trustee is not necessarily limited to the amount of the rents actually collected by him while in possession, but may also include what he would have received on that account by proper diligence, that is, the reasonable rental value of the property. See Green v.

Winter, 7 Am. Dec. 475; Goode v. Gaines, 145 U. S. 141, 36 L. Ed. 654; Gaines v. Caldwell, 148 U. S. 230, 37 L. Ed. 432, 65 C. J. 1072, paragraph 999. See also Axtel v. Coons, *et al.,* 82 Fla. 158, 89 Sou. 419.

In Fricker v. Americus Mfg. & Imp. Co., 124 Ga. 165, 52 SE. 65, it was held:

"If an agent or person occupying a fiduciary relation towards an owner of property bought it in at sheriff's sale and took title in his own name, and occupied it in part and in part received rents from it, and upon an equitable proceeding it was determined that the owner was entitled to recover the property and have an accounting for rents, issues and profits, the liability of the defendant was not necessarily limited to the amount of rents actually collected by him while in possession, but would include what he should have received on that account by proper diligence; that is, the reasonable rental value of the property."

The rental value may be established by the testimony of qualified witnesses as to what the reasonable rental value of each piece of property was over the period involved. There was some evidence introduced as to what would be the reasonable amount of earnings on investments in real estate. This was not evidence as to the proper measure of value of the rents due by J. S. Wilkins to the appellants. If J. S. Wilkins had kept an accurate account and had testified as to the amount of rents actually received, that testimony would have been of some value in determining the amount for which he would be required to account in this regard. But, as he did not do that and as it appears that he used a part of the property, he must be required to account for the rental value of the property as shown by the evidence of witnesses qualified to testify to the rental value.

The record shows that J. S. Wilkins was allowed as a credit for what he claimed to have paid as taxes and in-

surance, not only on this property but probably on property of his own, and that he was further allowed the sum of $250.00 per month for looking after the business of W. C. Wilkins, which included looking after this property. Therefore, he is not entitled to have deducted any other items from the rental value.

For the reasons stated, that part of the decree hereinabove indicated as being erroneous is reversed; the remainder of the decree is affirmed and the cause is remanded with directions that the decree be modified so as to conform to the views herein expressed.

It is so ordered.

Reversed in part and remanded.

WHITFIELD, P. J., and BUFORD, J. J., concur.

TERRELL, C. J., concurs in opinion and judgment.

BROWN, J., dissents in part.

CHAPMAN, J., disqualified.

Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

BROWN, J (dissenting in part).—Undoubtedly the law of this case was settled in the opinion and decision of this court handed down on December 22, 1939, and reported in 141 Fla. 188, 192 So. 791. In that opinion and decision we dealt with an appeal from a final decree which disposed of two cases, one of which involved the change of beneficiary of an insurance policy, and the other was this accounting case. In the opinion in that case Mr. Justice BUFORD, speaking for the Court said:

"The accounting case involves a question as to whether or not (1) J. S. Wilkins was acting in a fiduciary capacity in handling the affairs of W. C. Wilkins, now deceased, from January 1, 1931, until the death of W. C. Wilkins on

August 1, 1935; and (2) if the first question is answered in the affirmative, whether or not by reason of such fiduciary relationship J. S. Wilkins acquired control, possession and management of certain property theretofore belonging to W. C. Wilkins; and (3) whether or not certain properties shown to have been acquired by J. S. Wilkins from W. C. Wilkins during that period were lawfully acquired and became the property of J. S. Wilkins, or were procured by undue influence and, therefore, were not transferred or conveyed by valid sale, gift, conveyance or delivery from W. C. Wilkins to J. S. Wilkins."

And again, later on in the same opinion, the following appears:

"The record in the instant case is a great deal more voluminous than was the record in the will case above referred to, but, when all is considered, the result is that we find cumulative evidence pro and con concerning the same factual conditions but must again arrive at the conclusion that during all those years between 1930 and the death of W. C. Wilkins, W. C. Wilkins was under the dominant influence of J. S. Wilkins."

It thus appears that it was clearly held in that case, reading the opinion as a whole, that J. S. Wilkins was acting in a fiduciary capacity for W. C. Wilkins from January 1, 1931, to August 1, 1935, the date of the death of W. C. Wilkins, and that during that period he acquired deeds of real estate from W. C. Wilkins, and that the burden was cast upon him to show that the real estate so acquired was bona fide and legally acquired, and that he had failed to meet that burden, and that therefore he should be required to convey to the appellants all of such real estate thus acquired which remained vested-in the appellees, J. S. Wilkins and Nora Wilkins, his wife.

As I read this record the deed of July 22 ,1929, was ex-

ecuted by W. C. Wilkins, in Leesburg, Florida, before the period of fiduciary relations began, and that the same was delivered to J. S. Wilkins during the year 1929.

I, therefore, am of the opinion that the chancellor below, in his last decree, from which this appeal was taken, misconstrued the opinion of this Court of December 22, 1939, when he canceled the deed referred to, and in so doing I think the Chancellor erred.

However, I am inclined to agree with the chancellor in his holding that the testimony before him was not sufficient to make any definite finding as to the rental values which should be charged against J. S. Wilkins. As to this feature of the case, I concur with the majority opinion in holding that J. S. Wilkins should make an accounting to the appellants to the amount of the rents actually collected by him while in possession during the period mentioned in the opinion, and also that he should also make an accounting for rents which he could by reasonable diligence have secured during that period, that is, the reasonable rental value of the property. Of course, he would be entitled to credit for the cost of repairs, taxes and insurance, if any, paid out by him during that period. I concur also with the holding of the majority opinion in holding that, in the absence of a showing by J. S. Wilkins as to what amount of rents he actually collected, the rental value may be established by the testimony of qualified witnesses as to what was the reasonable rental value of each piece of property for each year throughout the period of about four years and a half involved in this case. In this respect, I think that further testimony should be taken by the chancellor, or that the parties should be given the opportunity to adduce further testimony on this question so as to enable the chancellor to arrive at some definite conclusion on that question.

Except as in the respects above pointed out I concur in the majority opinion.