### In re GENERAL COFFEE CORPORATION, Debtor.

### CITY NATIONAL BANK OF MIAMI and City National Bank Corporation, Appellants/Cross-Appellees,

### v.

### GENERAL COFFEE CORPORATION, Appellee/Cross-Appellant.

#### No. 85–2024 Civ.

United States District Court, S.D. Florida, Miami Division.

Aug. 26, 1986.

---

See also, Bkrtcy., 59 B.R. 7.

Robert Schantzman, Miami, Fla., Haddad, Josephs & Jack, Bert Hellman, Coral Gables, Fla., for appellants, cross-appellees.

Alan Kluger, David Levine, Miami, Fla., for appellee, cross-appellant.

## MEMORANDUM DECISION

SCOTT, District Judge.

This is an appeal from the United States Bankruptcy Court for the Southern District of Florida. City National Bank of Miami and City National Bank Corporation ("City National") appeal the Bankruptcy Court's determination that the Debtor—General Coffee ("General Coffee") can avoid the imposition of a constructive trust. General Coffee and Intervenor Shawmut Boston International Banking Corporation ("SBIBC") cross-appeal the lower court's finding that City National properly traced the trust res to assets presently within General Coffee's (the debtor-in-possession) control.

## I. HISTORY OF THE CASE

For the purposes of this appeal, the undisputed facts are succinctly set forth in the Bankruptcy Court's Memorandum decision:

In March 1982, the debtor expanded its coffee roasting business by purchasing the Chase & Sanborn division in New Orleans, Louisiana from Standard Brands. The purchase price consisted of $3 million cash, a note in the amount of $4.75 million, and an amount equal to the value of the inventory of coffee on the day before the closing. The amount paid for the inventory was $6,488,011. General Coffee paid the sum by check drawn on its account at City National Bank of Miami.

The funds upon which the check was drawn are those which plaintiffs [Appellants] claim were wrongfully taken from them by a series of events which began with the bank's purchase in March 1982 of an $8 million certificate of deposit from Banco Exterior S.A. (Panama). The purchase was made on the recommendation of Camilio Bautista, who was simultaneously an officer and director of both Domino Investments, Ltd., which controlled General Coffee, and the plaintiff bank. The $8 million certificate was pledged by Bautista, without the plaintiffs' authorization, as collateral for an $8 million loan from Banco Exterior to Domino. Domino then transferred the $8 million to General Coffee and the money was deposited into its account at City National Bank.

Neither Domino nor General Coffee has repaid any part of the debt owed Banco Exterior, which has set off the certificate of deposit against the delinquent account. Plaintiffs have also sued Banco Exterior for the $8 million in an action pending in another court.

The Chase & Sanborn assets acquired by General Coffee through the agreement with Standard Brands included not only the inventory of coffee, which has been turned over numerous times since 1982, but also a plant in New Orleans, equipment and trademarks.

*In Re General Coffee*, 41 B.R., 781, 782–83 (Bankr. S.D.Fla. 1984).

City National does not challenge the Bankruptcy Court's factual determinations (1) that General Coffee defrauded City National; (2) that City National properly traced a constructive trust res of $6,488,011 to assets within the control of the debtor-in-possession; and (3) that City National proved a factual basis to justify the imposition of a constructive trust. Rather City National takes issue with the court's legal conclusions (1) that under Florida law a constructive trust comes into existence only after judicial determination; and (2)

that the provisions of § 544 of the Bankruptcy Code override those of § 541 to bring the trust property within the estate notwithstanding the absence of the debtor's beneficial ownership. The threshold question posed by these issues is whether the trust-impressed property was held by General Coffee for City National's benefit at the "commencement of the case". *See* § 542(d). That question, in turn, depends upon when a constructive trust comes into existence.[1]

## II. FLORIDA LAW AND CONSTRUCTIVE TRUST

There are two prevailing views on when a constructive trust arises: The majority view is that a trust is created when the fraud or other wrong is perpetrated; the minority view is that a trust is not formed until such time as a court decrees it. The Bankruptcy Court applied the minority rule and did so based upon the authority of *Palmland Villas I Condominium v. Taylor,* 390 So.2d 123 (Fla.4th DCA 1980).

The battleground is drawn; and *Palmland* is the situs. City National contends that *Palmland* is not an accurate statement of Florida Law but rather an aberration in it. General Coffee counters that *Palmland* was correctly decided and points to subsequent decisions. Since the contentions of the parties rise or fall upon the correctness of *Palmland,* it is axiomatic that any analysis must begin with that decision.

### A. *Palmland*

■ The Fourth District Court of Appeal in *Palmland* held for the first and only time in Florida jurisprudence that a constructive trust is not created by the facts themselves but by a court order or judgment. 390 So.2d at 124. In other words, the trust remains inchoate absent a judicial decree.

In *Palmland* the appellant sought to determine the validity of several liens which were recorded against a parcel of real property. The appellant argued that the liens could not have been attached "since the property was a trust asset from the time of the conveyance." *Id.* Consequently, "the debtor-obligor was thereafter simply a trustee without power to pledge trust assets to secure its corporate obligations." *Id.* While acknowledging that a constructive trust arises by operation of law, the Appellate court nonetheless determined that

... a constructive trust is not created by the facts themselves since no trust is found where the operable facts occur beyond the statutory period.

*Id.* at 125

The basis for the court's conclusion came from two earlier cases which did not address the "creation" issue but held essentially that an action for an imposition of a constructive trust could be time barred. *Wadlington v. Edwards,* 92 So.2d 629 (Fla. 1957); and *Yawn v. Blackwell,* 343 So.2d 906 (Fla.3d DCA 1977). Based upon these decisions, the *Palmland* court reached the "inevitable" conclusion that if the "beneficiary" could be precluded from equitable relief it is the adjudication not the facts which give rise to the trust's creation. A determination of the correctness of this conclusion requires an analysis of these cases as well as a historical review of Florida law on constructive trusts.

In *Wadlington, supra* the plaintiff sought to have a constructive trust imposed on a parcel of land which her husband had allegedly purchased with her funds. She further contended that title to the property was taken "against her will."[2] The Florida Supreme Court first espoused the general principle that "[a] constructive trust is a remedy which equity applies in order to do justice." 92 So.2d at 631. The

---

1. All parties agree that the Bankruptcy Court properly looked to state law to resolve this issue. *Matter of Esgro, Inc.,* 645 F.2d 794 (9th Cir.1981); *In Re Shepard,* 29 B.R. 928 (Bankr.M. D.Fla.1983).

2. Plaintiff asserted her claim for the imposition of a trust only after a county judge ruled that the property was homestead property and that she would receive no more than a life estate interest.

court then compared resulting trusts to constructive trusts opining that "a constructive trust is a relationship adjudicated to exist by a court based on particular factual situations created by one or more of the parties." *Id.* "The trust is 'constructed' by equity to prevent an unjust enrichment at the expense of another as the result of fraud...."[3] Although the court ultimately found that the facts warranted equitable relief, it nonetheless determined that the plaintiff's excessive delay in seeking judicial assistance barred her from such extraordinary relief.[4]

*Yawn v. Blackwell, supra,* the second case relied upon by the *Palmland* court, similarly did not address the creation issue but instead whether summary judgment has been properly granted. Appellants, plaintiffs below, initially sought the imposition of a constructive trust on a parcel of land. Plaintiffs subsequently amended their pleadings to describe the trust claimed as a resulting trust. The trial court determined that the claim was stale because of the twenty year limitation regarding the assertion of claims against recorded deeds. The Court of Appeal reversed and remanded holding that material issues of fact existed regarding the formation of the resulting trust. The creation issue was never considered by the court. In passing, however, the court noted the distinction between a resulting trust and a constructive trust vis-a-vis the statute of limitations.

*Wadlington* and *Yawn* hold that a "beneficiary" will be precluded from obtaining equitable relief when he has sat on his rights. In essence, these cases support the basic maxim that "equity aids the vigilant". Because a beneficiary is denied equitable relied in these circumstances, it does not "inevitably" follow that a constructive trust is created only by judicial decree. This Court concludes that the reasoning applied in *Palmland* is in error. This conclusion is supported by a review of other Florida precedent.

### B. *Other Florida Precedent*

In *Wilkins v. Wilkins,* 144 Fla. 590, 198 So. 335 (1940), the Florida Supreme Court clearly articulated and applied the majority rule. In that case, a son wrongfully obtained monies from the sale of his father's bonds. This money was subsequently transferred from the son's account into that of his wife's account. From that account a parcel of real estate was purchased in the joint names of the son and wife. The court concluded that this property was held in a constructive trust from the date of its purchase—

The contention is made that because the deed to the property into which the trust fund was traced conveyed the property as an estate by the entireties to J.S. Wilkins and wife, the lien could not be impressed upon the property. *The fallacy of this is that the trust was impressed in the very transaction in which the conveyance was acquired* and, therefore, J.S. Wilkins and wife took the property as an estate by the entireties impressed with a lien to the extent of the

---

**3.** Addressing the concept that equity "constructs" a trust, Professor Scott states: "It has been suggested that the constructive trust does not arise until the defrauded person brings a suit in equity and the court decrees specific restitution. The notion seems to be that a constructive trust is created by the court and that it therefore does not arise until the court creates it by its decree. The notion is in part fostered by the terminology employed. It is sometimes said that when there are sufficient grounds for imposing a constructive trust, the court 'constructs a trust.' The expression is, of course, absurd. The word 'constructive' is derived from the verb 'construe', not from the verb 'construct'. It is true that both verbs are derived from the same Latin word, but they have quite different meanings in English. No one would think of saying that where there is constructive fraud or malice or notice the court constructs fraud or malice or notice.... So in the case of a constructive trust, the court finds from the circumstances that some of the consequences which would follow from the creation of an express trust should also follow." *Scott on Trusts,* 462.4 (3d ed. 1967).

**4.** The evidence revealed that Plaintiff had known her husband's deeds in 1934. Thus, when plaintiff filed suit in 1955, she had waited more than twenty years to rectify the purported wrong.

trust fund which went into payment for that property.

*Id.* at 337 (emphasis added). The Court's language, in unambiguous terms, expressly recognized the trust's creation from the moment the wrong occurred.

One year later the Florida Supreme Court again applied the majority rule. In *City of Sarasota v. Dixon*, 146 Fla. 369, 1 So.2d 198 (1941) the Dixon Fish Company leased property from the City of Sarasota. The agreement provided that any improvements made on the premises would belong to Dixon. One year into the lease, the fish company went into receivership. Several years thereafter A.W. Dixon fraudulently represented to the city that he had the authority to assume the remaining portion of the lease. Upon termination of the lease the city deeded the property and improvements to A.W. Dixon. One of the original partners of the fish company subsequently brought suit against A.W. Dixon for both rent and possession of the Dixon Fish Company Building. During the pendency of the action, A.W. Dixon died and the administratrix of his estate joined the proceedings.

The Court found the facts established that A.W. Dixon "took possession of the building subject to the rights of the Dixon Fish Company." 1 So.2d at 201. The court further stated:

[w]e hold that the controlling factor in this case is that under the circumstances which A.W. Dixon acquired possession of such building in question *he took possession of such building in trust for the use and benefit of Dixon Fish Company and its receiver.*

*Id.* at 202. (emphasis added).

The court then determined that

... our conclusion is that in the instant case the *facts and circumstances raised a constructive trust in favor of M.W.*

*Dixon against A.W. Dixon in his lifetime and his personal representative who so held the property subsequent to his death.*

*Id.* (emphasis added)

Lastly, the court decreed that

... *the conduct* of the defendant and decedent *raised a constructive trust* in favor of the plaintiff and, therefore, *equity had jurisdiction to determine all rights between the parties growing out of the transaction.*

*Id.* (emphasis added)

From this language, it is clear that the Florida Supreme Court recognized the trust's existence long before equitable relief was granted. The court acknowledged the majority rule when it defined equity's role in the construction of the trust, "equity had jurisdiction to determine all rights between the parties growing out of the transaction."

This analysis makes clear that Florida, for more than forty years, has adopted and applied the rule that a constructive trust is created when the fraud occurs and not when a court decrees it. It is at this moment that the beneficiary's rights vest under the trust.

The Florida rule is in accordance with the majority viewpoint as reported by Professor Scott.[5] More recent Florida appellate decisions illustrate this principle as well.[6]

*Palmland* was decided incorrectly. Its reasoning is in error. It is an aberration in Florida law. *Palmland* relied incorrectly upon *Wadlington* and *Yawn* and without the benefit of *Wilkins* and Dixon. The Bankruptcy Court's legal conclusion that the constructive trust formed on City National's behalf did not arise until after the filing of the bankruptcy petition is reversed.[7] City National's beneficial interest vested when the fraud occurred.

---

**5.** *See supra* note 3.

**6.** *See Mayer v. Cianciolo,* 463 So.2d 1219 (Fla. 3d DCA 1985); *Malkus v. Gaines,* 434 So.2d 957 (Fla. 3d DCA 1983), *pet. for rev. denied,* 446 So.2d 100 (Fla.1984); *Hallam v. Gladman,* 132

So.2d 198 (Fla. 2d DCA 1961) and *Traub v. Traub,* 102 So.2d 157 (Fla. 2d DCA 1958).

**7.** The Court also rejects the progeny of cases which relied upon *In Re General Coffee Corp.,* 41 B.R. 781 (Bankr.S.D.Fla.1984) for the propo-

## III. PROPERTY OF THE ESTATE AND STRONG–ARM CLAUSE.

■ Having resolved the question of when a constructive trust arises under Florida law, it is now necessary to determine whether property which the Debtor-General Coffee has bare legal title to is available to satisfy the general creditors of the estate. Stated another way—Is City National's beneficial interest "property of the estate" which is subject to distribution among the general contractors?

The Bankruptcy Court properly determined that General Coffee fraudulently acquired from City National title to $6,488,-011 and that General Coffee held assets in that amount in trust for City National.[8] However, the court concluded that the trust was a "secret lien" avoided by the debtor-in-possession's "strong-arm" powers under 544.[9]

City National, relying on § 541(d), contends that the trust property entered the bankrupt's estate subject to its equitable interest. Section 541 of the Bankruptcy Code states:

Property in which the debtor holds, as of the commencement of the case, only bare legal title and not an equitable interest ... becomes property of the estate under subsection (a)(1) or (2) of this section ...

The statute continues:

[that property] becomes property of the estate only to the extent of the debtor's legal title to such property, but *not to the extent of any equitable interest in such property that the debtor does not hold.* (emphasis added)

The fallacy in the Bankruptcy Court's conclusion that § 544 avoids City National's equitable interest lies within its premise that City National had no equitable interest at the "commencement of the case." In light of this Court's determination to contrary, it follows that the $6,488,-011 entered General Coffee's estate subject to City National's interest.

■ As a general rule § 541(d) prevails over § 544 strong-arm powers. In *Quality Holstein Leasing,* 752 F.2d 1009 (5th Cir.1985), the new Fifth Circuit, after having reviewed the legislative history of 541, ascertained that "Congress did not mean to authorize a bankruptcy estate to benefit from the property that the debtor did not own." *Id.* at 1013. This Court

---

sition that Florida adheres to the minority rule. *See, In Re Lucar Enterprises, Inc.,* Case No. 85–0329–Civ–Nesbitt (S.D.Fla. July 11, 1985), *aff'd per curiam,* (11th Cir. May 1, 1986); *In Re Janis,* 45 B.R. 295 (Bankr.S.D.Fla.1985) and, *In Re Guaranteed Ins. Underwriters, Inc.* 44 B.R. 1004 (Bankr.S.D.Fla.1984). *But see In Re Hampton,* 43 B.R. 633 (Bankr. M.D.Fla.1984) (constructive trust arises at the time wrong occurs or when court decrees it to exist). All of these decisions were predicated upon the Bankruptcy Court's opinion in this case, which as demonstrated, in turn is predicated upon *Palmland.* Rejection of *Palmland* likewise dictates rejection of these decisions. While the phenomena of one incorrectly decided decision spawning offspring of a like persuasion is not common in Florida jurisprudence, it has had its occasion. *See, e.g., Frankel v. City of Miami Beach,* 340 So.2d 463 (Fla.1976) (misapplication of fraud rule by District Court to class actions whose fraud was not alleged).

8. This issue is discussed more fully in a later portion of the text. *See infra* at p. 709.

9. Section 544(a) of the Bankruptcy Code gives the trustee or debtor-in-possession the status of

virtually an ideal lien holder. That statute, in relevant part, provides:

The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is avoidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such creditor exists;

(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such creditor exists; or

(3) a bona fide purchase of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

concurs. Therefore, when state law impresses property that a debtor holds in trust prior to the petition date, the trust beneficiary may recover his equitable interest.[10] Accordingly, City National is entitled to recover from General Coffee the $6,488,011 equitable interest presently in its substituted form.

## IV. THE CROSS–APPEAL: TRACING THE TRUST

Appellee General Coffee and Intervenor SBIBC cross-appeal the Bankruptcy Court's findings that a constructive trust was proved and traced to assets within the debtor's control. Specifically, the court found that

... the trust res in the amount of $6,488,011 has been traced by the plaintiffs [City National] in its original or substituted form to ‑ assets presently within the control of the debtor. Plaintiffs have failed, however, to trace the ‑remainder of the $8 million which is in question here.

For the purposes of this action, I also find that plaintiffs have proved a factual basis to justify resort to imposition of a constructive trust.

41 B.R. at 783.

■ A review of the record below and the facts as set forth in the court's order clearly establish the creation of a contructive trust.[11] That finding is not clearly erroneous and thus will not be set aside.[12]

■ City National, as a beneficiary, has the initial burden of establishing that its property was wrongfully taken and is in General Coffee's possession. *In Re First Fidelity Financial Services,* 36 B.R. 508 (Bankr.S.D.Fla.1983). As noted, City National has sustained this burden. City National, however, has the additional burden

of tracing the property and identifying it in its original or substituted form. *Matter of Kennedy & Cohen, Inc.,* 612 F.2d 963 (5th Cir.1980); *In Re Shephard,* 29 B.R. 928 (Bankr.M.D.1983).

■ The gravamen of Cross-Appellants' argument relies upon the fact that City National's money was used to purchase an inventory of coffee which has since been "turned-over" numerous times. This "turn-over", the argument continues, prevents City National from identifying a res, consequently, it has failed to sustain its tracing burden.

■ Cross-Appellants' position is wholly without merit. Their characterization that the funds were used solely for the purchase of a specific inventory of coffee belies logic and good business sense. The funds were used to purchase an aggregation of assets which constituted an ongoing business. The trial court's ruling properly reflected this view of the evidence and therefore cannot be considered erroneous.[13]

## V. CONCLUSION.

Having considered the parties' briefs, their oral arguments and based upon the foregoing discussion, it is ORDERED and ADJUDGED that the Bankruptcy Court is AFFIRMED in part and REVERSED in part: The Court is affirmed as to its determinations that a constructive trust arose on behalf of City National and that it had traced the res to assets presently within the debtor's possession. The Court is re‑versed as to its conclusions that the trust did not come into existence until after the filing of the petition for bankruptcy. Similarly, the Court is reversed as to its conclusion that General Coffee's "strong-arm"

---

**10.** The Court recognizes that § 541(d) powers override 544 powers "only where state law confers title on a third party effective prior to the commencement of the bankruptcy case". 752 F.2d at 1014 n. 10.

**11.** *See* Transcript at pp. 10–49.

**12.** Findings of fact will not be set aside unless clearly erroneous while legal conclusions are

freely reviewable. Bankr. *In Re American Mariner, Inc.,* 734 F.2d 426, 429 (9th Cir, 1984); Bankr.R. 8013.

**13.** The tracing requirement is a factual determination subject to the clearly erroneous standard. *See supra* note 12.

**710**

powers avoided City National's equitable interest.

In passing, this Court must observe that it has been most reluctant (and as a result somewhat tardy) in reaching this decision—not due to a lack of confidence in its position—but because, it is called upon first to interpret Florida precedent and, in effect, substitute its judgment over a Florida Appellate Court and, second, to reverse an able and competent Bankruptcy judge for which it has great respect. The task of deciding this case is more ably left to the Florida Supreme Court not a United States District Judge interpreting Florida law. If this Court had the option, it would have certified the issue to the Florida Supreme Court. It is hoped that upon reaching the appellate level—as most certainly this case will—the parties will suggest the option of certification to the United States Court of Appeal; and, Florida judges will ultimately decide this uniquely Florida issue.