GODBOLD, Circuit Judge:
 

 This is an appeal by debtor General Coffee and intervenor Shawmut Boston International Banking Corporation
 
 [1]
 
 from an adverse bankruptcy decision by the district court that General Coffee, as debtor-in-possession, could not bring into its estate over $6 million it held in constructive trust for City National Bank of Miami (“CNB”). We affirm.
 

 I. FACTUAL BACKGROUND
 

 The facts are undisputed. The bankruptcy court found that: (1) General Coffee defrauded CNB; (2) CNB properly traced a constructive trust res of $6,488,011 to assets within the control of General Coffee as debtor-in-possession; and (3) CNB proved a factual basis to justify the imposition of a constructive trust in its favor.
 
 [2]
 
 The bankruptcy court nevertheless held that the assets of the constructive trust of which CNB was beneficiary were part of General Coffee’s bankruptcy estate and subject to distribution to General Coffee’s creditors.
 
 *701
 
 The court explained that under Florida law “a constructive trust comes into existence on the date of the order or judgment of a court of competent jurisdiction declaring that a series of events has given rise to a constructive trust.”
 
 In re General Coffee Corp.,
 
 41 B.R. 781, 783 (Bankr.S.D.Fla.1984)
 
 (In re General Coffee I)
 
 (quoting
 
 Palmland Villas I Condominium Assoc. v. Taylor,
 
 390 So.2d 123,124 (Fla. 4th DCA 1980)). Thus, the court concluded, CNB’s constructive trust arose after General Coffee has filed for bankruptcy, and General Coffee could bring the trust assets into the bankruptcy estate through its strong-arm powers under 11 U.S.C. § 544:
 

 In the final analysis, the issue here is whether an economic loss should be born[e] by the bank’s stockholders or by the debtor’s creditors. Both groups were equally innocent of responsibility for causing the loss. Congress has resolved through § 544 that the debtor’s creditors must at all costs be protected from secret liens. The Florida court has resolved that a constructive trust remains a secret lien until it is imposed by a court.... It follows that the debtor is entitled to avoid any constructive trust which [the bank is] entitled to assert.
 

 Id.
 
 41 B.R. at 784.
 

 On appeal the district court reversed. It held that the bankruptcy court’s exclusive reliance on
 
 Palmland Villas
 
 was misplaced. The holding in
 
 Palmland Villas
 
 that a constructive trust does not arise until decreed by a court was, according to the district court, contrary to Florida law.
 
 In re General Coffee Corp.,
 
 64 B.R. 702, 707 (S.D.Fla.1986)
 
 (In re General Coffee II).
 
 The court explained that the Florida Supreme Court has long accepted the majority view
 
 [3]
 
 that a constructive trust arises as a matter of law when the facts giving rise to the fraud occur.
 
 Id.
 
 at 706-07. The district court concluded, therefore, that the constructive trust in favor of CNB arose prior to the filing of General Coffee’s bankruptcy petition.
 
 Id.
 
 at 707.
 

 Having determined that CNB’s rights arose before General Coffee filed its bankruptcy petition, the district court had to decide whether General Coffee could nevertheless bring the trust assets into its estate through its powers under 11 U.S.C. § 544(a). The court explained, relying exclusively on
 
 In re Quality Holstein Leasing,
 
 752 F.2d 1009 (5th Cir.1985), that a debtor-in-possession could not bring into the estate property in which it held only legal title.
 
 In re General Coffee II,
 
 64 B.R. at 708. The court concluded, therefore, that CNB was entitled to recover from General Coffee the $6,488.011 in traced assets.
 

 General Coffee contends on appeal that the district court improperly ignored the
 
 Palmland Villas
 
 decision and that the constructive trust did not arise until the bankruptcy court decreed it, which occurred after General Coffee filed its bankruptcy petition. The traced trust assets were therefore part of the estate subject to distribution to its creditors. General Coffee further argues that even if the constructive trust arose prior to the bankruptcy petition, it could bring the trust assets into the estate through its strong-arm powers under 11 U.S.C. § 544(a). We reject both of these contentions and therefore affirm.
 

 II. CONSTRUCTIVE TRUST
 

 The bankruptcy court relied exclusively on
 
 Palmland Villas
 
 to conclude that a constructive trust does not exist until the date of judgment declaring that a series of events has given rise to a constructive trust.
 
 In re General Coffee I,
 
 41 B.R. at 783-84. General Coffee contends that the bankruptcy court properly applied Florida law and that the district court erred in refusing to follow controlling Florida precedent.
 

 “A federal court applying state law is bound to adhere to decisions of the state’s intermediate courts absent some persuasive indication that the state’s highest court would decide the issue otherwise.”
 
 Silverberg v. Paine, Webber, Jackson &
 
 
 *702
 

 Curtis, Inc.,
 
 710 F.2d 678, 690 (11th Cir.1983);
 
 see also Peoples Bank of Polk County v. Roberts,
 
 779 F.2d 1544, 1545 (11th Cir.1986) (per curiam);
 
 King v. Guardian Life Ins. Co.,
 
 686 F.2d 894, 898 (11th Cir.1982). We believe, however, that
 
 Palmland Villas
 
 does not accurately reflect Florida law. With the exception of
 
 Palmland Villas
 
 Florida courts have consistently applied the majority view on when constructive trusts arise. We are convinced that, if presented with this issue, the Florida Supreme Court would reaffirm the majority approach that a constructive trust arises when the facts giving rise to the fraud occur.
 

 In
 
 Wilkins v. Wilkins,
 
 144 Fla. 590, 198 So. 335 (1940), the Florida Supreme Court implicitly recognized that a constructive trust exists from the moment the fraudulent transaction giving rise to it takes place:
 

 The contention is made that because the deed to the property into which the [constructive] trust fund was traced conveyed the property as an estate by the entireties to J.S. Wilkins and wife, the lien could not be impressed upon that property. The fallacy of this is that the trust was impressed in the very transaction in which the conveyance was acquired and, therefore, J.S. Wilkins and wife took the property as an estate by the entireties impressed with a lien to the extent of the trust fund which went into the payment for that property.
 

 Id.
 
 198 So. at 337.
 

 The Florida Supreme Court reached a similar conclusion in
 
 City of Sarasota v. Dixon,
 
 146 Fla. 369, 1 So.2d 198 (1941). There the court held that because A.W. Dixon had made fraudulent representations to the city regarding the Dixon Fish Company building, “he took possession of such building in trust for the use and benefit of Dixon Fish Company and its receiver.”
 
 Id.
 
 1 So.2d at 201. The court concluded that “in the instant case the facts and circumstances raised a constructive trust in favor of M.W. Dixon against A.W. Dixon in his lifetime and his personal representative who so held the property subsequent to his death.”
 
 Id.
 
 Thus, the Supreme Court recognized that the constructive trust existed long before the court granted any equitable relief.
 

 Although these decisions did not expressly adopt the majority rule, they applied that rule to the facts of each case. Subsequent Florida appellate court decisions have similarly applied, without expressly adopting, the majority rule that a constructive trust exists from the time the facts giving rise to it occur.
 
 See, e.g., Mayer v. Ciandolo,
 
 463 So.2d 1219, 1221 (Fla. 3d DCA 1985) (constructive trust in favor of son arose when he quitclaimed his joint interest in real property for the sole reason of facilitating its sale by his mother);
 
 Malkus v. Gaines,
 
 434 So.2d 957, 960-61 (Fla. 3d DCA 1983) (Malkus held partnership interest in company in constructive trust for Gaines since the date of the fraud),
 
 pet. for rev. denied,
 
 446 So.2d 100 (Fla.1984);
 
 Johnson v. Johnson,
 
 349 So.2d 698, 699 (Fla. 4th DCA 1977) (“When Mrs. Johnson conveyed her interest in The Harborage to her husband, she became the beneficiary under a constructive trust and he became the trustee.”);
 
 Hallam v. Gladman,
 
 132 So.2d 198, 204 (Fla. 2d DCA 1961) (constructive trust “arises through operation of law [w]here one through fraud, abuse of confidence, or other questionable means gains property which in equity or good conscience he should not be permitted to retain”);
 
 Traub v. Traub,
 
 102 So.2d 157, 158 (Fla. 2d DCA 1958) (defendant held real property in constructive trust for his brothers from the time they executed the misleading deed to the property).
 
 [4]
 

 The only Florida appellate decision to reject the majority approach was
 
 Palm-land Villas. Palmland Villas
 
 did not cite any of the cases mentioned above. The court relied exclusively on
 
 Wadlington v. Edwards,
 
 92 So.2d 629 (Fla.1957) and
 
 *703
 

 Yawn v. Blackwell,
 
 343 So.2d 906 (Fla. 3d DCA 1977). The court’s entire reasoning was as follows:
 

 An action for the declaration of a constructive trust may be barred if the events giving rise to the necessity for the imposition of this equitable remedy transpired beyond the period permitted by the applicable statute of limitations, usually expressed in terms of laches. See
 
 Yawn v. Blackwell,
 
 343 So.2d 906 (Fla. 3d DCA 1977). This leads inevitably to the conclusion that a constructive trust is not created by the facts themselves since no trust is found where the operable facts occur beyond the statutory period. The facts simply form the basis upon which a court may presently impose a trust if the statute of limitations has not barred this remedy.
 
 Wadlington v. Edwards,
 
 92 So.2d 629 (Fla. 1957).
 

 Palmland Villas,
 
 390 So.2d at 125.
 

 Wadlington
 
 and
 
 Yawn
 
 hold only that a beneficiary of a constructive trust will be precluded from obtaining equitable relief if he has sat on his rights.
 
 [5]
 
 Because a constructive trust beneficiary may be denied equitable relief because he has sat on his rights does not “inevitably” lead to the conclusion that a constructive trust does not exist until so decreed by a court of equity.
 

 General Coffee suggests that
 
 Palmland Villas
 
 can be reconciled with the prior Florida decisions applying the majority rule because
 
 Palmland Villas
 
 implicitly adopts the rule that a constructive trust arises at the time of the fraud when an action is between the wrongdoer and the constructive trust beneficiary and that such a trust arises at the time of a judicial decree when an action is between an innocent third party and the beneficiary. This suggestion is without merit. A constructive trust arises from a situation where one party has defrauded another. The constructive trust relationship has nothing to do with the rights of innocent third parties.
 
 See
 
 A. Scott,
 
 The Law of Trusts
 
 § 462.4, at 3421 (3d ed. 1967).
 

 General Coffee also argues that we are bound by our former decision in
 
 In re Lucar Enterprises, Inc.,
 
 No. 85-0329 (11th Cir. May 1, 1986), which affirmed a district court decision pursuant to Eleventh Circuit Local Rule 25. The district court in that case, relying on
 
 In re General Coffee I
 
 and
 
 Palmland Villas,
 
 had held in part that a constructive trust did not arise until decreed by a court of equity.
 

 When the court affirms the judgment of the district court pursuant to Rule 25, it does not necessarily adopt the reasoning of the district court; it merely holds that the judgment is not erroneous.
 
 Cf. DeShong v. Seaboard Coast Line R.R.,
 
 737 F.2d 1520, 1523 (11th Cir.1984) (where appellate court affirms district court decision with a memorandum opinion stating that
 
 *704
 
 “the appellant has not presented any valid basis for reversal,” memorandum opinion has no binding precedential value).
 

 We hold that under the Florida law that we are convinced the Supreme Court of that state would find controlling, a constructive trust in favor of CNB came into existence before General Coffee filed its petition in bankruptcy.
 

 III. PROPERTY OF THE ESTATE
 

 Because we agree with the district court that the constructive trust in favor of CNB came into existence before the bankruptcy proceedings began, we must decide whether General Coffee can nevertheless bring the trust assets into the estate for distribution to its creditors under 11 U.S.C. § 544(a). Section 544(a), the “strong-arm” provision of the Bankruptcy Code, permits a trustee to avoid secret liens against property in the debtor’s possession. It grants a trustee the rights of an essentially ideal lienholder against property in which the debtor does not possess complete title.
 
 [6]
 

 The district court held that General Coffee could not use § 544(a) to defeat CNB’s rights as beneficiary of the constructive trust.
 
 In re General Coffee II,
 
 64 B.R. at 708. The court explained that under 11 U.S.C. § 541(d), the estate took only legal title to the trust assets, subject to the equitable interests of CNB.
 
 [7]
 
 The court concluded, relying exclusively on
 
 In re Quality Holstein Leasing,
 
 752 F.2d 1009 (5th Cir.1985), that the provisions defining property of the estate in § 541(d) prevail over a trustee’s strong-arm powers under § 544.
 
 In re General Coffee II,
 
 64 B.R. at 708.
 

 The drafters of the Bankruptcy Code appear not to have anticipated the potential for tension between sections 541(d) and 544(a). Since the enactment of § 541(d), however, many courts have recognized that these sections are not always easily reconciled because § 541(d) excludes certain equitable interests from the estate of a bankrupt while § 544(a) permits the trustee to bring certain tainted property into the control of the estate. For example, where the debtor holds certain real property in constructive trust for another because of fraud, § 541(d) excludes from the estate the constructive trust beneficiary’s equitable interest in the property.
 
 See, e.g., Quality Holstein Leasing,
 
 752 F.2d at 1012;
 
 In re Elin,
 
 20 B.R. 1012, 1015-16 (Bankr.D.N.J.1982),
 
 aff’d mem.,
 
 707 F.2d 1400 (3d Cir.1983). It appears, however, that § 544(a) would bring the trust property into the estate in spite of § 541(d). Section 544(a) would permit the bankruptcy trustee to bring the constructive trust property into the estate through his strong-arm powers as a hypothetical bona fide
 
 *705
 
 purchaser because a constructive trust beneficiary’s interest in real property is, by definition, an unrecorded interest, which is inferior to the interest of a bona fide purchaser of the real property.
 
 See, e.g., In re Eads,
 
 69 B.R. 730, 735 (Bankr. 9th Cir. 1986);
 
 In re Cascade Oil Co.,
 
 65 B.R. 35, 42 (Bankr.D.Kan.1986);
 
 In re Great Plains Western Ranch Co.,
 
 38 B.R. 899, 906 (Bankr.C.D.Cal.1984).
 

 
 *704
 
 Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor’s legal title to such property, but not to the extent of any equitable interest in such property that the debt- or does not hold.
 

 
 *705
 
 Courts have responded to the tension between these sections in two ways. Some courts, like the district court here, have held that § 541(d) prevails over the trustee’s strong-arm powers under § 544(a).
 
 See, e.g., Quality Holstein Leasing,
 
 752 F.2d at 1013;
 
 In re Triple A Coal Co.,
 
 55 B.R. 806, 813 (Bankr.S.D.Ohio 1985);
 
 In re Earl Roggenbuck Farms, Inc.,
 
 51 B.R. 913, 917 (Bankr.E.D.Mich.1985). These courts have reasoned that “[although [§ 544(a)’s strong-arm] powers allow a trustee to assert rights that the debtor itself could not claim to property, Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own.”
 
 Quality Holstein Leasing,
 
 752 F.2d at 1013. Any other interpretation would, according to these courts, render § 541(d) meaningless.
 
 See id.
 
 at 1013 n. 9 (legislative history of § 541(d) reveals that purpose of section is to protect the holder of an equitable interest where the debtor possesses only legal title);
 
 Earl Roggenbuck Farms,
 
 51 B.R. at 917 (“The effect of [§ 541(d)] is that the interest in property to which the trustee succeeds can be no greater than that which the debtor itself had.”).
 

 A majority of courts have rejected this approach. They have held that sections 541(d) and 544(a) operate independently. Thus, property not part of the estate under § 541(d) may come into the estate under § 544(a).
 
 See, e.g., Cascade Oil Co.,
 
 65 B.R. at 39;
 
 In re Dlott,
 
 43 B.R. 789, 792 (Bankr.D.Mass.1983);
 
 Great Plains,
 
 38 B.R. at 902-05;
 
 In re Anderson,
 
 30 B.R. 995, 1009-10 (Bankr.M.D.Tenn.1983);
 
 Elin,
 
 20 B.R. at 1016. These courts have reasoned as follows:
 

 [A] reading and comparison of § 541(d) and § 544 leads to the inescapable conclusion that § 541(d) does not represent a general limitation on the trustee’s avoidance powers under § 544. Section 541(d) qualifies the trustee’s right under § 541(a) to succeed to certain property interests possessed by the debtor at the time of the filing of his bankruptcy petition. In contrast, § 544(a) arms the trustee at the time of the filing of the debtor’s bankruptcy petition with all the rights and powers of various creditors and transferees of the debtor so as to avoid incomplete or improperly perfected transfers of the debtor and thereby insure an equality of distribution among the debtor’s general unsecured creditors.
 
 See, e.g.,
 
 4 L. King, Collier on Bankruptcy 11541.01, 541-5 to 541-9 and 11 544.01, 544-2 to 544-4 (15th ed. 1982); 2 W. Norton, Bankruptcy Law and Practice §§ 29.01 and 30.01 (1982).‘ Section 544(a) in fact contemplates that the debtor has no remaining interest in the property which is the subject of the avoided transaction. The trustee is thus given the ability to bring into the estate, in addition to the debtor’s property as defined by § 541(a) and limited by § 541(d), any property which he can obtain through his avoidance powers under the Bankruptcy Code, including his ability to invalidate certain transfers by the debtor under § 544(a).
 

 Anderson,
 
 30 B.R. at 1009-10. Although this result seems to contradict the language of § 541(d), these courts have explained that it is consistent “with the letter and with the spirit of the Bankruptcy Code.”
 
 Great Plains,
 
 38 B.R. at 907.
 

 This circuit has never resolved the tension between sections 541(d) and 544(a). Nor do we need to do so here. The result in this case is the same under either approach.
 

 Under the minority approach, CNB’s interest in the trust assets as beneficiary of the constructive trust does not come into General Coffee’s bankruptcy estate. Where a debtor holds property in a constructive trust for another, “ft]he rule is elementary that the estate succeeds only to the title and rights in the property that the
 
 *706
 
 debtor possessed_ Therefore ..., the estate will generally hold such property subject to the outstanding interest of the beneficiaries.”
 
 Georgia Pacific Corp. v. Sigma Serv. Corp.,
 
 712 F.2d 962, 968 (5th Cir.1983) (quoting 4
 
 Collier on Bankruptcy
 
 II 541.13 (L.King 15th ed. 1987));
 
 see also Quality Holstein Leasing,
 
 752 F.2d at 1012. Thus, because § 541(d) prevails over a trustee’s strong-arm powers under § 544(a), CNB has a right to recover the assets of the constructive trust.
 

 CNB has the same rights under the majority approach. Section 544(a) confers on the bankruptcy trustee the rights of a hypothetical “ideal creditor” under state law. 4
 
 Collier on Bankruptcy
 
 11544.02.
 
 [8]
 
 General Coffee contends that because a constructive trust is essentially an equitable lien, it is defeated by a subsequent lienholder without notice. General Coffee is correct that under Florida law “an equitable lien is superior to the right of all persons except bona fide purchasers, or subsequent valid lienholders, without notice,”
 
 Blumin v. Ellis,
 
 186 So.2d 286, 295-96 (Fla. 2d DCA),
 
 cert. denied,
 
 189 So.2d 634 (Fla.1966), but General Coffee goes too far. Although it is difficult to define a constructive trust precisely, it is not an equitable lien under Florida law.
 

 Florida law defines an equitable lien as follows:
 

 An equitable lien is not an estate of property in the thing itself nor a right to recover the thing, that is, a right which may be the basis of a possessory action. It is simply a right of a special nature over a thing, which constitutes a charge or encumbrance upon it, so that the very thing itself may be proceeded against in an equitable action....
 

 Tucker v. Prevatt Builders, Inc.,
 
 116 So.2d 437, 439-40 (Fla.1959);
 
 see also Hullum v. Bre-Lew Corp.,
 
 93 So.2d 727, 730 (Fla. 1957). A constructive trust, on the other hand, is a trust relationship created “by equity to prevent the unjust enrichment of one person at the expense of another as the result of fraud, undue influence, abuse of confidence or mistake in the transaction that originates the problem.”
 
 Wadlington v. Edwards,
 
 92 So.2d 629, 631 (Fla.1957);
 
 see also Steinhardt v. Steinhardt,
 
 445 So.2d 352, 356 (Fla. 3d DCA 1984). In a trust relationship the trust beneficiary possesses an equitable ownership interest in the trust property, while the trustee possesses legal title to the property.
 
 See Axtell v. Coons,
 
 82 Fla. 158, 89 So. 419, 420 (1921). A constructive trust beneficiary therefore possesses an equitable ownership interest in the trust property, which is substantively different than an equitable lien against the property.
 
 See generally
 
 A. Scott,
 
 The Law of Trusts
 
 § 463 (3d ed. 1967). The question before us is thus whether an ideal creditor would prevail over a constructive trust beneficiary under Florida law.
 

 We have found no Florida cases on this question. We believe, however, that for purposes of priority in bankruptcy a constructive trust beneficiary should have the same rights to the trust assets that a beneficiary of an express trust would have. An express trust beneficiary clearly has priority to trust assets over a judicial lienholder or execution creditor.
 
 [9]
 
 CNB’s rights as beneficiary of the constructive trust therefore would prevail over a hypothetical ideal lienholder.
 

 Professor Scott would reach a similar conclusion. As he discussed in his treatise
 
 *707
 
 on trusts, a constructive trust beneficiary prevails over all subsequent takers of the trust property except bona fide purchasers. A. Scott,
 
 The Law of Trusts
 
 § 462.4, at 3621. He explained his reasoning with the following example:
 

 [W]here A’s money is wrongfully taken by B and is used by B to purchase land, A is entitled to enforce a constructive trust of the land. In this case A has such an interest in the land as to enable him to reach it in satisfaction of his claim. He can reach the land even though B is insolvent, since B’s creditors are not in the position of bona fide purchasers.
 

 Id.
 
 § 462.5, at 3423;
 
 cf. In re Storage Technology Corp.,
 
 55 B.R. 479, 484 (Bankr.D.Colo.1985) (beneficiary of a constructive trust prevails over a judicial lien creditor under Colorado law).
 

 We hold that because General Coffee cannot bring the trust assets into its bankruptcy estate under either approach, CNB is entitled to recover the traced assets of $6,488.011.
 

 AFFIRMED.
 

 [1]
 

 . Shawmut Boston is an agent for a group of financial institutions that was General Coffee’s principal pre-petition lender. The financial group also provided General Coffee with post-petition financing, in which, with the bankruptcy court's permission, General Coffee granted the group a security interest in all property of the estate. Shawmut Boston intervened and supported General Coffee's position before the bankruptcy court and on appeal to the district court.
 

 [2]
 

 . For a discussion of the underlying facts that constituted the fraud against CNB, see
 
 In re General Coffee Corp.,
 
 41 B.R. 781, 782-83 (Bankr.S.D.Fla.1984).
 

 [3]
 

 .
 
 See
 
 Annotation,
 
 Imposition of Constructive Trust in Property Bought with Stolen or Embezzled Funds,
 
 38 A.L.R.3d 1354, 1359 (1971); A. Scott,
 
 The Law of Trusts
 
 § 462.4 (3d ed. 1967).
 

 [4]
 

 . Application of the majority rule is consistent with the doctrine in Florida law that a constructive trust beneficiary is entitled to be returned to his original position or to his position at the time of the fraud.
 
 See Quinn v. Phipps,
 
 93 Fla. 805, 113 So. 419, 422 (1927);
 
 see also Mayer,
 
 463 So.2d at 1222.
 

 [5]
 

 . The
 
 Palmland Villas
 
 court may have been confused by the language in
 
 Wadlington
 
 to the effect that such a "trust is ‘constructed’ by equity to prevent an unjust enrichment at the expense of another as the result of fraud.” 92 So.2d at 631. As Professor Scott explained in his treatise on trusts, such an interpretation is understandable, but not persuasive:
 

 It has been suggested that the constructive trust does not arise until the defrauded person brings a suit in equity and the court decrees specific restitution. The notion seems to be that a constructive trust is created by the court and that it therefore does not arise until the court creates it by decree. The notion is in part fostered by the terminology employed. It is sometimes said that when there are sufficient grounds for imposing a constructive trust, the court "constructs a trust.” The expression is, of course, absurd. The word "constructive" is derived from the verb “construe,” not from the verb “construct.” ... When it is said that there is constructive fraud or malice or notice, what is meant is that, although there is no actual fraud or malice or notice, the same consequences, or many of them, follow. The court construes the circumstances in the sense that it explains or interprets them; it does not construct them. So in the case of a constructive trust, the court finds from the circumstances that some of the consequences which would follow from the creation of an express trust should also follow.
 

 [[Image here]]
 

 [T]here is no foundation whatever for the notion that a constructive trust does not arise until it is decreed by a court. It arises when the duty to make restitution arises, not when that duty is subsequently enforced.
 

 A. Scott,
 
 The Law of Trusts
 
 § 462.4 (3d ed. 1967).
 

 [6]
 

 . Section 544(a) provides:
 

 The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
 

 (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a j'udicial lien, whether or not such a creditor exists;
 

 (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
 

 (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
 

 As debtor-in-possession General Coffee has the same rights and powers as a trustee in bankruptcy. 11 U.S.C. § 1107(a).
 

 [7]
 

 . Section 541(d) provides:
 

 [8]
 

 . Both parties agree that if we reach this issue Florida law is controlling.
 

 [9]
 

 . Florida law would treat the beneficiary of a resulting trust differently under some circumstances. “A judgment creditor cannot have his debt satisfied out of the property held in the name of his judgment debtor under a resulting trust for another, unless it is made to appear that it was on the faith of the judgment debtor’s apparent ownership that credit was given which resulted in the judgment sought to be satisfied."
 
 Estey v. Sharp Elecs. Corp.,
 
 409 So.2d 217, 217 (Fla. 4th DCA 1982) (quoting
 
 Laganke v. Sutter,
 
 137 Fla. 71, 187 So. 586, 589 (1939)). This possible different treatment is justified because in a resulting trust, the trust beneficiary could have protected his interest. A constructive trust beneficiary, on the other hand, could have done nothing in advance to protect his interest from a future lienholder because a constructive trust is created by equity to prevent the unjust enrichment of one party at the expense of another.