**In re EQUIPMENT SERVICES, LTD., Debtor.**

**Bankruptcy No. 3–80–00367.**

United States Bankruptcy Court, D. Alaska.

Dec. 31, 1983.

---

Terry McGuire of Lynch, Farney & Crosby, Anchorage, Alaska, for debtor, Equipment Services, Ltd.

Paul Stahl, Asst. Atty. Gen., Dept. of Law, Office of the Atty. Gen., Anchorage Branch, Anchorage, Alaska, for claimant, Alaska Dept. of Labor.

## OPINION

J. DOUGLAS WILLIAMS, II, Bankruptcy Judge.

This matter came on for hearing upon remand from the United States District Court for the District of Alaska.

Equipment Services, Ltd., ("debtor"), filed a Chapter 11 petition on October 31, 1980. The Alaska Department of Labor, ("claimant"), filed a claim in the amount of $4,998.00 for 340 hours of work, representing 225 hours of overtime, calculated at $14.70 per hour. The claim had been assigned to the claimant by Mary DeLucia, a former employee of the debtor, pursuant to AS 23.05.060, 23.05.140—23.05.250 and 23.-10.110(b). The debtor filed an objection to the claim and a hearing was held at which this court ruled orally that the debtor had failed to produce sufficient evidence to overcome the prima facie validity of the claim. The debtor filed a notice of appeal and the District Court issued an opinion and order remanding the case for further proceedings by this court. Specifically, this court is to articulate the standard of proof needed to overcome the prima facie validity of a claim, and to determine if the debtor met the standard, particularly in light of the debtor's failure to keep certain employee time records required by the statutes of the United States and the State of Alaska.

## FACTS

The only evidence produced at the hearing on the objection to the claim was the testimony of the debtor's president and general manager, Carole Huntington, and a letter written by Mary DeLucia, both offered on behalf of the debtor. The claimant submitted no evidence.

Mary DeLucia began working for the debtor at a starting salary of $1500.00 per month on May 17, 1979, as the credit manager, which involved doing credit checks of customers, extending credit to those who appeared suitable, and possibly keeping the ledger cards on the credit accounts. In July of 1979, Ms. DeLucia became the full-charge bookkeeper for the debtor. As such, one of her duties was to type out the debtor's checks for Ms. Huntington's signature, including the payroll checks.

Sometime in July of 1980, the debtor's bookkeeping department was reorganized and Ms. DeLucia was returned to her former position as credit manager. Apparently feeling her services were no longer needed, Ms. DeLucia submitted a letter of resignation to Ms. Huntington on August 7, 1980, and left the debtor's employ on August 9, 1980. She was receiving a salary of $2,000.00 per month when she resigned. Ms. DeLucia did not make any claim for overtime when she left. The resignation letter was admitted into evidence as a debtor's exhibit.

On September 9, 1980, Ms. DeLucia assigned a wage claim in the amount of $4,998.00 to the Commissioner of the Alaska Department of Labor. The claim was for 225 hours of overtime, representing 340 hours at her regular rate of pay of $14.70 per hour worked from January 9, 1980 to

May 29, 1980. The claim was based on a breakdown kept by Ms. DeLucia which was not offered into evidence at the hearing. Due to the filing of the debtor's Chapter 11 petition on October 31, 1980, the administrative proceedings with the Department of Labor were not completed, and the Department filed its claim on December 9, 1980, attaching a copy of the wage claim assignment.

Ms. Huntington denied at the hearing that any wages were owed to Ms. DeLucia when she left; however, Ms. Huntington admitted that the only daily time records kept of the hours worked by employees during the period of Ms. DeLucia's employment were kept for the mechanics, and not for those working in the sales building, such as Ms. DeLucia. Ms. Huntington also testified that Ms. DeLucia sometimes came in at 10 or 11 in the morning,although business hours were from 8 a.m. to 5 p.m. She also stated that Ms. DeLucia was generally still there at 5 o'clock when Ms. Huntington left, and that Ms. DeLucia had her own keys to the office.

It was also Ms. Huntington's testimony that it was not her policy to pay overtime. If an employee worked more than the usual number of hours, compensatory time-off would be given at a rate of one hour for each hour of overtime worked.

## DISCUSSION

Bankruptcy Rule 301(b), (now Bankruptcy Rule 3001(f)), provided that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Since the case of *Whitney v. Dresser,* 200 U.S. 532, 26 S.Ct. 316, 50 L.Ed. 584 (1906), which held that the proof of claim is evidence and that more than the mere interposition of an objection is required to overcome the prima facie validity of a claim, the courts have been formulating the standard of proof which the objector to the claim is required to produce. Once the burden of producing that evidence is met, the claimant must then produce sufficient evidence to prove the validity and amount of

the claim by a preponderance of the evidence submitted. The claimant carries the burden of persuasion at all times, but the burden of producing the evidence shifts, and it is the standard to be used in determining when the shift from objector to claimant occurs which is at issue between the debtor and the claimant.

The language used to articulate the standard varies widely among the cases. *See Alexander v. Theleman,* 69 F.2d 610, 611 (10th Cir.1934) ("substantial evidence...to dispute its correctness"); *Matter of King Resources Co.,* 20 B.R. 191, 198 (D.C.D.Colo. 1982) ("evidence of a true dispute on the merits"); *In re Estrada's Market,* 222 F.Supp. 253, 255 (S.D.Ca.1963) ("evidence to rebut the evidence of the claim"). Although it appears from the widely disparate language used by the courts in considering the issue that more than one standard exists, as to the debtor's objection the application of the various standards yields the same result, no matter the words used to describe the quantum of evidence needed to shift the burden of production back to the claimant.

As provided in *Whitney v. Dresser, supra,* the objector must do more than formally object to the claim. In *In re Bradley,* 16 F.2d 301 (S.D.N.Y.1926), the trustee, who was the objecting party, contended that the claim of the City of New York setting out personal property taxes assessed against the debtor was incorrect as the debtor had owned no personal property subject to taxation by the city for the years in question. The only witness called, who testified on behalf of the trustee, was the debtor's former attorney who could not state definitely what the personal property was or how much the debtor owned during the pertinent time periods. The court held that the trustee's burden was to show that the claim was wrong, and he had failed to do so since the testimony did not contradict the claim which established the city's prima facie case that the taxes due amounted to the sum specified.

The theory implied in *Bradley* that a denial, even a sworn denial, is not enough to

overcome the prima facie validity of a claim is further developed in such cases as *In re Watson*, 456 F.Supp. 432 (S.D.Ga.1978) and *Matter of King Resources, supra.* In *In re Watson* the United States filed a proof of claim for income taxes due from the debtors. The debtors claimed they were entitled to a carry back loss from later years which would reduce their taxes in the years for which a claim was filed. In rebuttal to the proof of claim, the debtors introduced their tax returns for the years in which they contended the loss was incurred, and testified that the returns were correct and accurate. The bankruptcy judge found that the debtors had sustained the net operating loss and that the proof of claim had been rebutted. The district court disagreed, stating that the tax returns alone carried no evidentiary weight, and the "...bare affirmation by the taxpayer of their correctness and his testimony that the income and loss reflected in them is accurate is on the same level of unpersuasiveness." 456 F.Supp. at 436.

In *Matter of King Resources Co., supra,* the court found that the prima facie validity of the claim had been overcome. The claimant was an attorney who had submitted a bill to the debtor before the filing of the bankruptcy petition for services he contended he had rendered to the debtor in connection with a corporate takeover attempted by the debtor. The former executive vice-president of the debtor testified as to the procedures followed in the ordinary course of business in approving or disapproving such a bill for attorney's fees and that the claimant's bill had been disapproved under the procedure with the exception of certain disbursements. In holding that the burden of production shifted back to the claimant, the court stated:

> The purpose of requiring an objecting trustee to produce probative evidence to call a claim into question is to prevent a Trustee from subjecting creditors to unnecessary expense, delay and embarrassment which would result if a formal objection, a 'mere statement that the claim is invalid,' *without evidence of a true dispute on the merits,* were considered sufficient.

*Id.* at 198 (Citation omitted, emphasis added).

█ From the development of the case law as highlighted by the above-referenced cases, this court concludes that the analysis to be used in determining whether the prima facie validity of the claim has been overcome is to decide if the objector has presented contradictory evidence to dispute either the amount of the claim or the fact that the claim is owed at all, other than evidence which is capable of supporting inferences which may be drawn in favor of the claim as easily as against the claim. Not until the objector has introduced evidence as to the invalidity of the claim or the excessiveness of the amount, or as to any affirmative defenses going to the allowability of the claim, does the burden rest on the claimant to introduce sufficient evidence to support the claim. 3 Collier Bankruptcy Practice Guide ¶ 51.08 (1983). In other words, the objector must show the facts which are evidence of an actual dispute, not just a denial unsupported by clear inferences or direct proof, as to the existence or amount of the debt claimed. The introduction of evidence from which inferences consistent with the creditor's claim can as easily be drawn as inconsistent inferences is not sufficient to shift to the claimant the burden of producing evidence. In such a situation the claimant may rest on the prima facie validity of the claim.

The debtor failed to present sufficient evidence to meet its burden. Ms. Huntington's testimony, in essence, was that Ms. DeLucia at times came in late, that Ms. DeLucia typed the payroll checks for signature, and that Ms. DeLucia left under good circumstances without requesting overtime pay. Ms. Huntington also testified, however, that Ms. DeLucia was still working at 5 o'clock when Ms. Huntington left, that Ms. DeLucia had her own office keys and could have stayed late, that it was the debtor's policy not to pay overtime, and that at the time Ms. DeLucia quit she was again the credit manager, which did not

involve typing out checks for signature. During her testimony Ms. Huntington also consulted the breakdown of hours drawn up by Ms. DeLucia and given to the claimant, but which was not offered into evidence, and Ms. Huntington did not specifically contest anything contained in the breakdown.

The circumstances in this case are similar to those contained in *In the Matter of Fisher Holding Co., Inc.,* 12 B.R. 191 (Bkrtcy.S. D.Ind.1981) in which the debtor objected to a claim filed by a creditor, James Marksberry, for 186½ hours of welding service rendered to the debtor in June of 1979. The debtor's witnesses testified that they did not see Marksberry at the situs of the debtor's operations during the hours of 6 a.m. to 5 p.m., but admitted that Marksberry did his welding when the debtor's loading operation closed down. The court held that the debtor had failed to meet its burden, stating:

> While the objector herein cast doubt generally upon the work habits and hours of claimant during the month of June, 1979, the objector did not specifically rebut the days and hours which Marksberry's claim indicates he worked during said month.... Objector's witnesses did not testify that Marksberry did not perform one hundred eighty-six and one-half (186½) hours of welding service to FHC in June, 1979.

*Id.* at 192–193.

■ The debtor in this case also failed to present any evidence beyond some general doubt as to Ms. DeLucia's working habits and her failure to present her claim for overtime while still employed by the debtor. Ms. Huntington's testimony that Ms. DeLucia worked after 5 o'clock when Ms. Huntington left could also support the inference that Ms. DeLucia did not ask for the overtime because the debtor gave compensatory time-off instead of overtime payments. It is not even clear if the period during which Ms. DeLucia at times came late to work was the same time period for which overtime has been claimed. The debtor has provided no evidence to show that the hours stated in the claim are wrong or that a true dispute, as defined by the case law, exists as to the amount or existence of the debt. Accordingly, the court finds that the debtor failed to overcome the prima facie validity of the claim.

The conclusion that the debtor's objection should not be sustained is also supported by the debtor's failure to keep certain records required by the Fair Labor Standards Act at 29 U.S.C. § 211(c) and the Alaska Wage and Hour Act at AS 23.05.080 and AS 23.-10.100(a), which provide that an employer shall make and maintain a record of the employees' hours, among other things. Ms. Huntington testified that she did not require the employees who worked in the sales building, including Mary DeLucia, to keep such a record.

The United States Supreme Court in *Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) and the Alaska Supreme Court in *Alaska International Industries, Inc. v. Musarra,* 602 P.2d 1240 (Alaska 1979), have interpreted the record keeping requirement under the Fair Labor Standards Act and the Alaska Wage and Hour Act, respectively, to provide that if the employee produces sufficient evidence to show the amount and extent of the work for which the employee was improperly compensated, the burden shifts to the employer to come forward with evidence sufficient to negate the reasonableness of the inference drawn from the employee's evidence. If this matter had continued to a close through the Alaska Department of Labor proceeding, the debtor would not have been able to avoid payment of the wage claim by relying on the evidence presented at the hearing on the objection to the claim.

Although the burden of proof in an action under the Fair Labor Standards Act or the Alaska Wage and Hour Act is not binding on a bankruptcy court in a proceeding to determine the validity of a claim, the court does consider it indicative of the public policy interest that proper records be kept by an employer and that an employee be properly compensated for any overtime worked.

When the debtor's lack of employment records is coupled with the prima facie validity of the claim, the inferences which could be drawn in favor of the debtor are insufficient to meet the debtor's burden of production.

Accordingly, an order will be entered re-affirming the allowance of claimant's claim in the amount of $4,998.00.