In re George Alton LENZ, a/k/a G. Al Lenz, a/k/a Al Lenz, a/k/a Al G. Lenz, and Betty G. Lenz, d/b/a Apple Ridge Apartments, Debtors.

Bankruptcy No. 85 B 03314 J.

United States Bankruptcy Court, D. Colorado.

Oct. 30, 1987.

---

James E. Freemyer, Denver, Colo., for debtors.

Curt Todd, Haligman and Lottner, P.C., Denver, Colo. for World Sav. and Loan Assn.

## MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH,
Bankruptcy Judge.

THIS MATTER comes before the Court on the Debtors' Objection to Claim of World Savings and Loan Association ("World").

This Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157. This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B) and (E).

Prior to the Debtors' bankruptcy, World held a deed of trust on the Debtors' 70–unit apartment building. On November 6, 1985, this Court (by former Bankruptcy Judge Jay L. Gueck) granted World relief from the automatic stay to pursue its interests in the collateral. In the Order granting that relief Judge Gueck found that:

> This property, if sold, would be for the purpose of gaining proceeds for distribution to lienholders. In the slow economy of Grand Junction, it would be unrealistic to expect any profit to remain for the debtor. If sold in a commercially reasonable manner, it is my judgment that the property would likely bring less than $700,000. This figure, in the economy of Grand Junction, represents an optimistic, yet realistic estimate.

On or about November 22, 1985, the Public Trustee held a foreclosure sale of the property and World was the successful bidder at $700,000.00. At that time, there was a total debt to World of $810,336.83 and the foreclosure sale left a deficiency of $110,-336.83. On or about May 30, 1986, the statutory redemption period expired and World received title to the property. On or about July 24, 1986, World sold the property to a 3rd party for $225,000.00. And, on or about November, 1986, World, through a negotiated settlement with an insurance company, collected $125,000.00 on a loan insurance policy. World has asserted a general unsecured claim for the $110,-336.83 deficiency.

Debtors assert that because World received the $125,000.00 loan insurance proceeds, there is no deficiency of $110,336.83, and indeed, that World owes the estate the difference between those figures of $14,-663.17.

Testimony at hearing was to the effect that when the Debtors were originally negotiating the loan with World, the Debtors were to pay the premiums on the loan insurance policy, but that they were unable to do so. As a result, the parties negotiated for a higher interest rate on the loan. World, nevertheless, bought the policy.

World argues that there are two types of losses: (1) the "foreclosure" loss of $110,-336.83; and (2) the "loan loss" calculated as follows:

| | |
|---|---|
| Amount of loan | $810,336.83 |
| Sale proceeds from 3rd party | −225,000.00 |
| Insurance proceeds | −125,000.00 |
| Loan loss | $460,336.83 |

However, there was no evidence that the sale from World to the 3rd party in July, 1986, was for fair market value. In addition, the evidence showed that World negotiated with, and accepted less that the maximum benefits from the insurance carrier. Thus, this Court will not consider World's "loan loss" in this proceeding. In

addition, this Court finds that in light of Judge Gueck's findings on November 6, 1985, and the results of the foreclosure sale on November 22, 1985, the fair market value of the property on November 22, 1985, was $700,000.00. Thus, World, through the foreclosure received the value of $700,000.00 to be applied against its debt of $810,336.83, leaving only $110,336.83 remaining to be paid.

■ World then argues that the collateral source rule precludes consideration of the loan insurance proceeds when calculating what remains on the debt. The collateral source rule had its origin in tort law and was invoked to prevent the tortfeasor from receiving the benefits originally intended for the injured party. This, it is believed, is a better result even though the injured party may end up with a "double" recovery of his damages. Thus, the general rule is that the benefits received by the injured party from a source wholly independent of, and collateral to, the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer.

■ The courts are somewhat divided upon the question of whether the general rule applies where the action is for the violation of a contract, and not for a tort. Some of them hold that the rule is the same in both cases. *See, e.g. Manila School Dist. v. Sanders*, 226 Ark. 270, 289 S.W.2d 529 (1956); *Consolidated Freightways, Inc. v. Moore*, 38 Wash.2d 427, 229 P.2d 882 (1951). Others hold that the amount of insurance collected by the property owner should be applied to reduce the recovery for breach of the contract, on the ground that the owner in such cases is entitled to recover only such damages as will compensate him for the loss sustained, especially where no right of subrogation exists. *See, In re Future Mfg. Co-op, Inc.*, 165 F.Supp. 111 (N.D.Cal.1958).

In this case, the insurance company had the option of paying basically the entire unpaid loan balance to World in exchange for conveyance of merchantable title and the assignment of any deficiency judgment or paying a lesser amount without receiving title and an assignment of the deficiency judgment. It chose the later option and thus there are no subrogation rights involved here.

I hold that the collateral source rule does not apply in this case for two reasons. First, the source was not wholly independent of the Debtors. They paid, indirectly, for the premiums on the insurance policy via an increased interest rate on the loan. Secondly, in bankruptcy, the goal is to compensate each creditor as much as possible for its losses, and yet give the debtor a fresh start, the policy of allowing this creditor a "double" recovery is inappropriate, especially when the beneficiaries of this "collateral source" are not wrongdoers, but in all probability, other creditors of the estate.

Although the case of *In re Oakland City Apartments, Inc.*, 1 B.R. 123 (Bankr.N.D. Georgia 1979), is not directly on point, the policies set forth in that decision apply here. If World were allowed to share as other unsecured creditors in the estate to the extent of its $110,336.83 claim after having already received the $700,000.00 value of the property plus the $125,000.00 insurance proceeds, it would be receiving "double" benefits to the detriment of other unsecured creditors.

For these reasons, the unsecured claim of World for $110,336.83 must be disallowed.

Furthermore, this Court is of the opinion that the excess $14,663.17 World received on its debt is property of the estate. However, recovery of that property must await an adversary proceeding under Bankruptcy Rule 7001(1). It is, therefore,

ORDERED that the claim of World Savings and Loan Association in the sum of $110,336.83, be and the same, is denied.