In re GENERAL COFFEE
CORPORATION, Debtor.

CITY NATIONAL BANK OF MIAMI
and City National Bank
Corporation, Plaintiffs,

v.

GENERAL COFFEE
CORPORATION, Defendant.

Bankruptcy No. 83–00889–BKC–TCB.

Adv. No. 84–0028–BKC–TCB–A.

United States Bankruptcy Court,
S.D. Florida.

April 29, 1988.

Robert A. Schatzman, Miami, Fla.,

Arthur J. England, Jr., Fine Jacobson, Schwartz, Nash, Bloch & England, Miami, Fla., Michael R. Josephs, Haddad, Josephs and Jack Coral Gables, Fla., for plaintiffs.

Ronald G. Neiwirth, Miami, Fla., for Nordberg, trustee.

Joseph B. Manello, Goldstein & Manello, Boston, Mass., for debtor.

## ORDER ON MANDATE

THOMAS C. BRITTON, Chief Judge.

The plaintiffs' motion (CP 126) to require the Creditor Trustee[1] to pay them $11,086,-854 forthwith was heard April 11.[2] The Court of Appeals has held in this case that plaintiffs are "entitled to recover the traced assets of $6,488,011". *In re General Coffee Corp.*, 828 F.2d 699, 707 (11th Cir.1987).

Plaintiffs are now also seeking $4,598,-843 interest on their judgment. The interest is calculated through February 16, 1988 from March 22, 1982 (the date funds were wrongfully transferred from the plaintiff bank) at the rate of 12% (the Florida statutory rate, *Fla.Stat.* § 687.01). (CP 126). The Florida statute has remained unchanged since 1982.[3]

The trustee challenges the amount to be paid on two grounds: (1) the confirmed chapter 11 plan limited plaintiffs' recovery upon this then disputed, unliquidated and unsecured claim to a particular fund, presently $7,066,554; and (2) plaintiffs have recovered part or all of this loss from other parties, a fidelity bond, a Panamanian bank, and perhaps others. The trustee asks this court to prevent a "double recovery".

I agree with the trustee that his liability to the plaintiffs is limited to the proceeds of the fund specified in the confirmation order. However, I agree with the plaintiffs that their recovery may not be diminished by amounts they may be entitled to recover or have recovered from collateral sources.

### The Confirmation Order

While this contested claim was awaiting trial, a confirmation hearing was held July 30, 1984 on a chapter 11 plan jointly proposed by the debtor and creditors. (CP 973). Plaintiffs, who were claimants in the bankruptcy, had filed an objection to confirmation because the plan made no provision for the payment of their claim. (CP 852). Following a lengthy discussion at the confirmation hearing (CP 973, pp. 9–38), plaintiffs' objection to confirmation was withdrawn and a confirmation order was entered August 3, 1984. (CP 886).

■ That order, which was not appealed, is binding upon all parties. 11 U.S.C. § 1141(a). *In re Constructors of Florida, Inc.*, 349 F.2d 595, 601 (5th Cir.1965); *Miami Center Limited Partnership v. Bank of New York*, 838 F.2d 1547, 1555 (11th Cir.1988).

■ It simultaneously limits and collateralizes plaintiffs' claim in the following specific and unambiguous provision:

"The objection to confirmation filed herein by CNB [plaintiffs] is resolved as is set forth in subsection (e) of this Order.

"(e) ... To the extent that CNB ultimately establishes that it is entitled to treatment as a beneficiary under any claim of constructive trust in any property of Chase [the defendant debtor] being conveyed to HBAI [Hills Brothers] under the Plan or otherwise, and that as such beneficiary, its interests, right in or to all or any of such property are superior to the claim of Chase, and any of its creditors, and HBAI therein, *such claim, to the extent this Court determines its interest in said property, shall conclusively be deemed transferred to and shall attach only to that portion of the*

---

1. The Creditor Trustee was selected and named by the creditors in this bankruptcy through a chapter 11 plan confirmed August 3, 1984 (CP 886 in No. 83–00889) for the purpose of carrying out the liquidation plan adopted by the creditors.

2. Plaintiffs' earlier motion filed in January (CP 121) was withdrawn nine days later. (CP 123).

3. The applicability of the State statute, the right to prepetition interest, the commencement date, and the calculations are not in issue before me.

*consideration paid by HBAI evidenced by a certain promissory note made by HBAI in the sum of $5,500,000 payable to Chase, together with any and all interest, proceeds or substitutes which may be realized by Chase or the Creditor Trustee therefor, but such claim shall attach to no other property of Chase, or that of any other person, including, without limitation, the Creditor Trustee or HBAI. The matter of CNB's entitlement to a constructive trust shall be tried by this Court on August 10, 1984."* (Emphasis added). (CP 886 at 5–6).

Plaintiffs now argue that:

"The court had no authority to limit artificially the amount which City National might recover on its claim for $8 million through the mechanism of restricting recovery to property having a value of $5.5 million. City National objected on a timely basis to the proposed confirmation plan, and at no time consented to limit its recovery in a lawsuit which had yet to be tried." (CP 132 at pp. 4–5).

I disagree. It is clear from the transcript of the confirmation hearing that though the original claim was for $8 million, plaintiffs acknowledged that their evidence supported no more than $6.5 million. (CP 973 at p. 20).

All parties favored a contemplated sale of all the debtor's tangible assets (a coffee plant, inventory, and trade name) to Hills Brothers. Plaintiffs asserted a trust interest in these assets. The sale to a third party could jeopardize plaintiffs' claim and the claim could frustrate the sale.

*Plaintiffs* proposed the compromise solution which was accepted by all parties at the confirmation hearing.[4] The incorporation of that compromise in the confirmation order was accepted by plaintiffs and they withdrew their objection.

Plaintiffs consented to limit their recovery to the specified fund in consideration of the collateral provided for their unsecured claim and withdrew their objection. But for the fact that Florida provides for interest that far exceeds the market, the stipulated fund fully secured the claim. The lawsuit remained to be tried solely to determine if plaintiffs were entitled to any part of that fund.

Plaintiffs' present contention that this court had no authority to enter the confirmation order is equally unpersuasive. Section 502(c) provides that:

"There shall be estimated for purpose of allowance under this section (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case."

Plaintiffs had the right to propose, the other parties had the right to accept, and this court had the right to approve a compromise treatment of this unliquidated claim in order to avoid delaying the bankruptcy administration.

Any question of this court's authority to enter the confirmation order is now res judicata as to plaintiffs.

Plaintiffs' alternative argument is that:

"Whatever discretion this court might have had to enter a confirmation order limiting the bank's recovery to a specific asset held by the bankruptcy estate, that discretion has been overridden by the supervening authority of the court of appeals, which has now declared that the bank is entitled to recover $6,488,011 from the bankruptcy estate." (CP 132 at p. 7).

As has already been noted, the fund available under the stipulation exceeds $7 million, and but for the failure of Florida

---

**4.** Plaintiffs' counsel said:

"If the Court will hear me out. Or order that the proponents modify the plan so as to provide for us in the alternative.

"We have proposed, for the last four weeks, a solution, and I will not involve the Court in this settlement discussion, which would preserve our rights and allow the plan to go forward on a modified basis.

"We are not asking that any proceeds from the sale of the reserved assets, of the excess inventory, be delivered to us pro tanto. Just reserve it. There is not going to be a distribution of the promissory note for two and a half years." (CP 973 at p. 19).

law to conform to the drop in interest rates, the fund would have been ample.

There is no indication in either the decision of the district court, 64 B.R. 702, or the court of appeals, *supra,* nor have plaintiffs suggested that any effort was made on appeal to collaterally avoid the settlement approved in the confirmation order. There was no reference to pre- or post-judgment interest in this court's findings or judgment, 41 B.R. 781 (which denied plaintiffs' claim) or in either appellate decision.

I do not agree that by inference or unavoidable implication that this court or either appellate court reversed the separate and unappealed confirmation order provision for the payment of this claim.

### Effect of Plaintiff's Recovery From Others

■ I agree with plaintiffs that the Florida collateral source rule precludes any pro tanto reduction of the damages to which plaintiffs are entitled.

It is undisputed that plaintiffs' right to recovery is governed by Florida law. It follows that the amount of plaintiffs' damages is also measured by State law.[5] In this State, with certain statutory exceptions not applicable here, damages in neither tort nor contract actions may be diminished by a plaintiff's entitlement to or recovery of compensation for some or all of its damages from another source. 17 *Fla. Jur.* 2nd, Damages §§ 31, 39.

The Trustee relies upon *In re Lenz,* 80 B.R. 528, 530 (Bankr.D.Colo.1987) where the collateral source rule was rejected in calculating a mortgagee's claim. The court subtracted the mortgagee's reimbursement from a loan loss insurance policy where there was no subrogation.

I share my colleague's frustration with the application of the collateral source rule to a bankruptcy estate, where the impact of the rule falls not on a wrongdoer, but on other equally innocent claimants against a bankruptcy estate, and where it collides with the bankruptcy objective of the equal treatment of all claimants.

However, I do not agree that this court may engraft that view upon the Code. Title 11 meticulously and expressly adjusts many areas of conflict between the remedies available under State law and the fundamental objectives of bankruptcy. Its provision for the recovery of interest is but one example.[6] It is a legislative, not a judicial prerogative to adjust this tension.

### Conclusion

The trustee is ordered to turnover to the plaintiffs forthwith the total proceeds of the Hills Brothers note ($5.5 million) together with any and all interest, proceeds or substitutes realized by the Creditor Trustee therefor, including any certificates of deposit purchased with those funds. To the extent that plaintiffs' motion exceeds that sum, it is denied. Each party shall bear its own costs.

---

**5.** State law must yield to the limitation under bankruptcy to the recovery of *postpetition* interest. 11 U.S.C. §§ 506(b), 726(a); *Collier on Bankruptcy* (15th Ed.1988) ¶¶ 506.05, 726.02[5]. With interest calculated to the date of bankruptcy, plaintiffs are entitled to $7,388,155. This

sum exceeds the stipulated limitation decreed in the confirmation order. Therefore, this point need not be decided here.

**6.** See note 5.