**In re Daryl B. FREDERES d/b/a Alexandria Bay Boat Works, Debtor.**

**Bankruptcy No. 88–21065.**

United States Bankruptcy Court,
W.D. New York.

April 5, 1989.

David D. MacKnight, Rochester, N.Y., for DIP.

Richard Cross, Associate Atty., Dept. of Law, Albany, N.Y., for N.Y.S. Dept. of Parks.

Michael J. Geiss, Asst. Regional Director, Thousand Islands Region, N.Y.S. Office of Parks, Recreation & Historical Preservation, Alexandria Bay, N.Y.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

This Chapter 11 debtor, by his November 17, 1988 motion, objected to the claim of the New York State Department of Environmental Conservation's Office of Parks, Recreation, and Historic Preservation ("OPRHP"). OPRHP's claim, for concession fees, was listed by the debtor on Schedule A–3 in the amount of $2,973.60 and described as disputed. The New York State Law Department, Civil Prosecutions Bureau, timely filed a Proof of Claim on behalf of OPRHP in the amount of $2,576.22.[1] The debtor's motion was heard on February 6, 1989, and reserved for decision on the papers submitted.

While questions of fact exist to be decided, the initial inquiry is one of law. A proof of claim properly filed according to 11 U.S.C. § 501(a) constitutes *prima facie* evidence of the claim's validity and amount. Bankruptcy Rule 3001(f). If the claim is objected to, the initial burden of producing evidence to rebut the *prima facie* effect of the proof of claim is on the objectant. *In re Wells,* 51 B.R. 563, 566 (D.Colo.1985). Once met, the burden of production shifts to the claimant, who must prove the validity and amount of the claim by a preponderance of the evidence. *In re Equipment Serv., Ltd.,* 36 B.R. 241, 243 (D.Ala.1983). Although the burden of production shifts between the parties, the burden of persuasion is always on the claimant. *In re Nantucket Aircraft Maintenance Co., Inc.,* 54 B.R. 86, 88 (D.Mass.1985). The burden of

---

**1.** In its Affidavit in Opposition to the debtor's motion, OPRHP asserted a claim of only $1,725.03.

production shifts only when the objectant has produced facts sufficient to demonstrate that an actual dispute exists; a mere denial of the claim's validity or amount will not suffice. *Equipment Serv.* at 244.

In the instant case, OPRHP and the debtor contracted for the debtor to operate a marina in Keewaydin State Park. The initial contract was for the period March 12, 1984 through October 31, 1986; it was extended by agreement on October 20, 1986 to run through January 15, 1987. The contract required the debtor to pay commissions to OPRHP in consideration of the license granted by the contract as follows: "31% of Gross and .05¢ [sic] per gallon of gasoline and .05¢ [sic] each pop, ice [sic], river charts". The extension agreement continued the commission rates set forth in the original contract.

The debtor collected $7,308.00 in revenues for "winter storage"[2] during the 1986–1987 winter season. OPRHP claims that the debtor is entitled to, at most, 60% of that amount, since his contract expired on January 15th of that season. The debtor argues, first, that the contract was ambiguous as to whether the debtor was entitled to the revenues for the entire winter season, and second, that OPRHP's course of dealing was to permit the concessionaire at the beginning of the season to retain all revenues (less commissions) for winter storage and for the spring concessionaire to launch the boats without compensation. This, the debtor claimed, had been his experience when he began his operation of the concession in March, 1984.

■ The debtor's mere denial of OPRHP's claim, as contained in his motion papers, is insufficient to rebut the claim's presumptive validity. *Equipment Serv.* at 244. The debtor's first argument, that the contract is ambiguous, is without merit. The contract expressly states: "The Licensee [the debtor] agrees to pay PARKS [OPRHP] as compensation for this license and for the privilege of operating said license within the park and for the period aforesaid as follows: ...." Both the contract and the extension agreement unequivocally provide a termination date.

■ However, the debtor's assertion that he was required to launch the boats in April, 1984, while the previous concessionaire retained all the revenues taken in for winter storage does have sufficient probative force to signal a genuine dispute. The *prima facie* validity of OPRHP's claim has been rebutted and the burdens of production and persuasion are on the claimant.

■ OPRHP offers the affidavit of Stephen Keeler, who states that his corporation, which was the 1983 concessionaire, launched the stored boats in spring of 1984. The debtor claims that it was he who launched the boats in spring of 1984, without compensation; he supports his assertion with the affidavit of Gary Rogers, his employee in 1984, who states that the debtor, not the 1983 concessionaire, launched the stored boats no earlier than mid-March, 1984.

Between these competing assertions, it seems more probable that the occupant of the concession in spring of 1984 launched the boats than that the displaced concessionaire, Mr. Keeler's corporation, returned to the marina, then operated by the debtor, to perform the launching. However, accepting that the debtor launched the boats in spring of 1984 without compensation, the debtor's experience, without more, does not constitute a "course of dealing" requiring a contrary construction of the contract's express terms.[3] From that single experience the parties cannot be expected fairly to understand the contract to permit the debtor to retain revenues received for services performed by a third party beyond the period covered by the contract. Furthermore, in New York a course of dealing would not alter the express terms of a

---

**2.** "Winter storage" encompasses removal of the boats from the water, storage for the winter, and launching in the spring.

**3.** A "course of dealing" is "a sequence of previous acts and conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." *Black's Law Dictionary* 318 (5th Ed.1979).

contract when, as here, the contract is not ambiguous. *City of New York v. New York City Ry. Co.*, 193 N.Y. 543, 548, 86 N.E. 565, 567 (1908); *Division of Triple T Serv., Inc. v. Mobil Oil Corp.*, 60 Misc.2d 720, 304 N.Y.S.2d 191, 203 (1969), *aff'd* 34 A.D.2d 618, 311 N.Y.S.2d 961 (1970).

Whatever inequity the debtor may have suffered in spring of 1984, the contract and the extension agreement are clear: the debtor's license from OPRHP expired January 15, 1987. There appearing no reason to adjust OPRHP's proposed 60/40 split between the debtor and the subsequent concessionaire, the debtor is entitled to 60% of the revenues for winter storage for 1986–1987, and owes commissions only on the amount retained.

OPRHP also claims that the debtor owes commissions on sales that appeared on the debtor's daily ledgers but were not reported by the debtor on his monthly statements to OPRHP.[4] The debtor does not challenge this portion of OPRHP's claim, so it is presumptively valid.

Based on the foregoing determination of the debtor's right to revenues for winter storage and OPRHP's unchallenged claim for other additional commissions, OPRHP's claim is valued at $2,607.85. However, OPRHP claimed only $2,576.22 on its proof of claim, and subsequently reduced its claim to $1,725.03 in its Affidavit in Opposition to the debtor's motion. Therefore, OPRHP's claim is valued at the amount asserted, $1,725.03.

The debtor's motion objecting to the claim of OPRHP is denied, and it is so ordered.

---

4. These claims are itemized on OPRHP's exhibits D and E accompanying their Affidavit in Opposition to the debtor's motion; they apply to the contract period from June 1, 1986 to January 15, 1987.