**In re George Alton LENZ, et al., Debtors.**

**WORLD SAVINGS AND LOAN ASSOCIATION, Appellant,**

v.

**George Alton LENZ, et al., Respondents.**

Civ. A. No. 87–K–1792.
Bankruptcy No. 85–B–03314–J.

United States District Court,
D. Colorado.

Feb. 8, 1990.

**524**

Curt Todd, Haligman and Lottner, P.C., Englewood, Colo., for appellant.

James E. Freemyer, Denver, Colo., for respondents.

## MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

The World Savings and Loan Association appeals the bankruptcy court's decision disallowing its claim against the estate of the debtors, George and Betty Lenz (collectively, Lenz). World Savings argues that the bankruptcy court improperly disallowed its claim because (1) Lenz put on no evidence to contest the validity of World's claim, (2) the amount of World's claim should have been calculated based on its "loan loss" and not its loss based on the court's earlier determination of fair market value, and (3) the "collateral source rule" precludes Lenz from benefitting from World's recovery of proceeds from its mortgage insurance. I affirm.

### I. *Facts.*

The facts relating to this appeal are not in dispute. On June 14, 1985, Lenz filed for bankruptcy under Chapter 11. At the time of the petition, Lenz owned property in Grand Junction known as the Apple Ridge Apartments. World Savings held a first deed of trust on the property and was in the process of foreclosing. On November 6, 1985, World Savings successfully obtained relief from the stay to proceed with the foreclosure. In that proceeding, the bankruptcy court determined that World Savings lacked adequate protection, that the debtors had no equity in the property and that the property was not necessary to the reorganization. Therefore relief from the stay was justified. To make these determinations, the bankruptcy court took evidence as to the value of the property at the time of the petition. It found that the property had a value of $700,000, which was between the $1,050,000 figure offered by the debtors' appraiser and the $290,000 figure offered by World Savings' appraiser.

On November 22, 1987, World Savings bid and obtained the Apple Ridge property for $700,000.00 at the foreclosure sale. On January 22, 1986, it filed its proof of claim against the estate for $110,336.83, representing the difference between the $810,-336.83 balance due on its loan to Lenz and the $700,000.00 value of the property. In July, 1986, World Savings then sold the property to a third party for $225,000.00.

In November, 1986, World Savings received $125,000.00 from the Commercial Loan Insurance Corporation under a mortgage insurance policy purchased by Lenz pursuant to the terms of the loan with World Savings. On July 8, 1987, Lenz objected to World Savings' claim, arguing that it had received $14,663.17 more than it was entitled—the difference between the insurance proceeds and the deficiency after foreclosure. The bankruptcy court agreed, and it denied World Savings' claim in its entirety. *See In re Lenz,* 80 B.R. 528 (Bankr.D.Colo.1987). World Savings now appeals. Since the issues before me are legal in nature, I review the bankruptcy court's conclusions de novo. *See First Bank v. Mullet (In re Mullet),* 817 F.2d 677, 679 (10th Cir.1987).

## II. *Issues.*

### A. Burden of Proof.

■ World Savings first contends that its claim should have been allowed as a matter of law because Lenz submitted a mere formal objection to the claim and never went forward with evidence to rebut the validity of the claim. Since under Bankr.R. 3001(f), World Saving's proof of claim constitutes prima facie evidence of its validity, World asserts that it should have prevailed as a matter of law.

There is little merit to this argument. It is true that, under Bankr.R. 3001(f), a party correctly filing a proof of claim is deemed to have established a prima facie case against the debtor's assets. In objecting to the claim, however, Lenz rebutted the validity of the claim with specific and detailed allegations, and attached a copy of the mortgage insurance policy, correspondence confirming that World Savings had received the $125,000 insurance proceeds, and a copy of the check itself. Lenz' objection raised no disputed issues of fact requiring an evidentiary hearing, only matters of law. Thus, the documents produced by Lenz in the objection were sufficient to put the matter at issue. Consequently, the burden of going forward shifted back to World Savings to prove the legitimacy of its claim. *See generally, California State Bd. of Equalization v. Official Unsecured Creditors' Comm. (In re Fidelity Holding Co.),* 837 F.2d 696, 698 (5th Cir.1988) (outlining the shifting burdens of production and persuasion in claim determination proceedings); *In re Frederes,* 98 B.R. 165, 166–67 (Bankr.W.D.N.Y.1989) (burden of production shifts when objectant produces facts sufficient to demonstrate an actual dispute exists). World Saving's assertion that it should have prevailed as a matter of law is untenable.

### B. World Saving's "Loan Loss" as the Basis for the Deficiency.

■ World Saving's next argument is that the bankruptcy court miscalculated the amount of its deficiency on the Lenz loan by basing it on the fair market value of the property as determined in the relief from stay hearing ($700,000.00), and not the amount it lost after it resold the property for only $225,000.00, or its "loan loss" ($460,336.83). Lenz argues that World Savings is bound by the $700,000.00 finding because it did not appeal this determination and it is the law of the case. The bankruptcy court rejected World Savings' argument because there was no evidence in the record that the third-party sale of the property was for fair market value and because it was bound by the earlier determination of that value. *See* 80 B.R. at 529–30.

World Savings has provided no relevant authority to support is position that its deficiency should be based on the "loan loss" formula it proffers. World should have contested the bankruptcy court's determination of the fair market value in the first instance, before the foreclosure sale, and may not succeed in subverting that finding without at least offering some evidence that the third-party sale was at arm's length and for fair market value. The bankruptcy court's decision is also supported by *United States v. Oakland City Apartments, Inc. (In re Oakland City Apartments, Inc.),* 1 B.R. 123 (Bankr.N.D. Ga.1979), discussed below, which rejected a creditor's claim of deficiency based on the creditor's determination of fair market value.

### C. Exclusion of Insurance Proceeds under "Collateral Source" Rule.

■ Finally, World argues that the amount it received from the mortgage insurer should be excluded from the calculation of its deficiency under the "collateral source" rule. This rule provides that compensation or indemnity received by the injured party from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer. *See Myers v. Beem,* 712 P.2d 1092, 1093 (Colo.App.1985). Lenz contends that the collateral source rule doesn't apply in this situation and that it is limited to actions relating to torts.

In its decision, the bankruptcy court generally observed that the rule is limited to tort cases, but it noted that certain courts

had applied the collateral source rule in breach of contract cases. 80 B.R. at 530; *see also City Nat'l Bank of Miami v. General Coffee Corp. (In re General Coffee Corp.),* 85 B.R. 905, 908 (Bankr.S.D.Fla.1988) (disagreeing with *Lenz* and applying the collateral source rule under Florida law). Nevertheless, it found the rule inapplicable for several reasons: first, the insurance proceeds were not wholly collateral to the debtors, in that they had indirectly paid the insurance premiums on the policy through an increased interest rate on their loan. *Id.* Second, the court pointed to the general bankruptcy policy to prevent "double" recovery to a creditor, "especially when the beneficiaries of the 'collateral source' are not wrongdoers, but in all probability, other creditors of the estate." *Id.*

Finally, the bankruptcy court relied on *In re Oakland City Apartments, Inc.,* 1 B.R. 123 (Bankr.N.D.Ga.1979), in which the court held that HUD, which had foreclosed on two properties and was left with a deficiency, could not apply the proceeds of fire insurance policies to reduce the deficiency because its bid at the foreclosure sale was based on the amount of the debt rather than fair market value of the property, and there had never been a judicial determination of the property's fair market value.

To allow HUD to collect the proceeds without an inquiry into the value of the properties obtained by HUD at foreclosure could result in allowing it greater than a single satisfaction. If the value of the real estate were greater than the debt, then, in exchange for its low bid, HUD would have already obtained the value which exceeds the amount owed it. To allow recovery of the insurance proceeds in that possible accurate description of the facts would, without further

inquiry, make a preferential situation worse. *Id.* at 124. The *Oakland City* court then ordered a hearing to determine fair market value. *Id.* at 125.[1]

Other than *Oakland City,* the parties have cited no other authority, and I have located none, which addresses the issue of how to account for a creditor's receipt of insurance proceeds in reduction of a deficiency on a loan and the claim resulting therefrom. The bankruptcy court's reasoning in this case was logical, in that the creditor should not be permitted a double recovery at the debtor and the other creditor's expense. Absent persuasive authority to the contrary, I affirm the bankruptcy court's ruling disallowing World Savings' claim.[2]

---

1. Other than *Lenz,* there is no other case law to date interpreting or applying the *Oakland City* case.

2. In addition to rebutting World Savings' arguments in this appeal, Lenz contends that World Savings should be required to return the insurance proceeds to the estate under 11 U.S.C. § 549, which allows the trustee to recover certain post-petition transactions. Lenz claims that the insurance proceeds are property of the estate under § 541. This argument was not raised

before the bankruptcy court. In fact, the bankruptcy court noted that it believed that the proceeds which World Savings received in excess of its deficiency ($14,663.17) were property of the estate, but that "recovery of that property must await an adversary proceeding under Bankr.R. 7001(1)." Therefore, whether the estate may recover the insurance proceeds under § 549 is not properly before me and I decline to rule on this issue.