**In re Jose A. FONTANEZ, Debtor.**

**Bankruptcy No. 88–21870.**

United States Bankruptcy Court,
W.D. New York.

April 26, 1990.

Paul M. Aloi, Rochester, N.Y., for debtor.

Hiscock & Barclay, by J. Eric Charlton, Syracuse, N.Y., for Key Bank of Central New York.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

This matter is before the Court on the Debtor's, Jose A. Fontanez, objection to Key Bank of Central New York's (hereinafter Key Bank) claim in the amount of $93,991.15 ($91,861.97 plus $2,129.18 prepetition interest). Jose Fontanez filed a petition for relief under Chapter 13 of Title 11 U.S.C. on December 12, 1988. The debt is based on overdrafts to Mr. Fontanez's checking account at Key Bank. The debt was listed as disputed. Key Bank filed a proof of claim on February 1, 1989. Thereafter, Mr. Fontanez filed a motion objecting to the claim of Key Bank. After a hearing, Key Bank sustained its claim.

The facts are as follows. In October of 1982, Mr. Fontanez advanced $5,000 of a total price of $21,000 to purchase a grocery store. His nephew, Hiram Hernandez, claims to have paid off the remaining balance but no evidence was entered that it was paid from his personal funds or from the store's profits. On April 15, 1983, Jose Fontanez filed a business certificate in the name of Jose Fontanez d/b/a Fontanez Grocery Store with the County Clerk's Office for the County of Monroe. Mr. Hernandez has been the exclusive operator of the store since it was purchased. He receives a salary for his efforts. Mr. Fontanez was never involved in the day to day operations. When the store was operated for a profit, it was split between Mr. Fontanez and Mr. Hernandez. The store has not shown a profit since 1986, but if a profit is made in the future, it would be split between Mr. Fontanez and Mr. Hernandez. There is no written agreement between the two men as to the operation or ownership of the store.

When Mr. Fontanez opened the Key Bank checking account on December 28, 1987, he was accompanied by Mr. Hernandez. The starter checks were either given to Mr. Hernandez by Mr. Fontanez or they

were mailed to the store where Mr. Hernandez took possession of them. The statements and cancelled checks were mailed directly to the store. The blank checks, check register, bank statements and cancelled checks were kept at Mr. Hernandez's home. Mr. Fontanez never saw the statements or cancelled checks. Moreover, he never asked to see them.

When the account was first opened, Mr. Fontanez would go to Mr. Hernandez's home each night to sign checks for the store. The checks would be drafted by Mr. Hernandez or his wife. This practice continued for approximately two months. When Mr. Fontanez stopped going to Mr. Hernandez's house each night, Mr. Hernandez or his wife would sign Mr. Fontanez's name to the checks. This practice continued until the account was overdrawn on September 15, 1988.

Mr. Hernandez also operates a bottle return business under the name New York State Returns. Mr. Fontanez has nothing to do with this business. During the first two weeks of September of 1988, Mr. Hernandez deposited checks payable to the order of Jose Fontanez written on the New York State Returns' account at Columbia Bank into the Fontanez Grocery Store account at Key Bank. Mr. Fontanez testified that he never saw these checks or stamped them for deposit. Mr. Hernandez then wrote checks to New York State Returns against the Fontanez Grocery Store account for the money he had deposited. The bank honored these checks even though they were written against uncollected funds. Mr. Hernandez or his wife signed Mr. Fontanez's name to the checks written against the Fontanez Grocery Store account. Mr. Hernandez does not remember if he told Mr. Fontanez about these checks. The checks deposited in the Fontanez Grocery Store account by Mr. Hernandez were returned as uncollected. This resulted in the overdraft of approximately $91,933.97.

In this case, Key Bank has filed a proof of claim setting out two different theories of liability. The first is based on the affidavit of confession of judgment signed by Mr. Fontanez.[1] The second is based upon the contractual nature of the relationship between the bank and Mr. Fontanez, and the "rules of conduct" imposed upon this relationship by the Uniform Commercial Code as enacted in New York. The burden of production now rests upon Mr. Fontanez to put forth evidence whose probative value is sufficient to rebut the *prima facie* effect of the proof of claim.

Mr. Fontanez presented evidence at the hearing which rebutted the *prima facie* effect of Key Bank's proof of claim. *See In re Frederes*, 98 B.R. 165, 166 (Bkrtcy.W.D.N.Y.1989). But, Key Bank has borne its burden of proving by a preponderance of the evidence the debt upon which its proof of claim is based is valid and in the amount stated. *Id.*

First, it has shown by uncontradicted documentary evidence the Fontanez Grocery Store checking account in issue had a negative balance of $92,271.33 on the date Mr. Fontanez filed his petition. Next, it has shown that as between Mr. Fontanez and Key Bank, Mr. Fontanez must bear the loss caused by any alleged wrongdoing of his agent, Mr. Hernandez.

The essence of this case is that Mr. Fontanez allowed Mr. Hernandez to have full control and authority over the operations of the store and use of the checking account. Mr. Fontanez now wishes to place the loss caused by Mr. Hernandez on Key Bank by denying Mr. Hernandez's authority to act for Mr. Fontanez. The acts of an agent may bind the principal to a third person even though the agent has exceeded or abused his authori-

1. An affidavit which confesses judgment is not a judgment. It is only the authority for entry of judgment. *Continental Casualty Co. v. Roche*, 233 N.Y.S.2d 719 (NY City Civ.Ct.1962). Filing and entry of the affidavit are prerequisites to obtaining any judgment based on the affidavit. *Steward v. Katcher*, 283 A.D. 50, 126 N.Y.S.2d 290 (1st Dept.1953). Key Bank has asserted that it has a valid confession of judgment which cannot be attacked on any recognizable grounds. Clearly, Key Bank has an affidavit of confession of judgment, but it has not presented evidence of its entry in any court. Therefore, it does not have a judgment.

ty. The principal will be bound if a third person has the right to believe the agent is acting within his authority and the third person would sustain a loss if the principal was not bound by the agent's acts. *Oriental Commercial & Shipping v. Rosseel, N.V.,* 702 F.Supp. 1005 (S.D.N.Y.1988); *Hallock v. State of New York,* 64 N.Y.2d 224, 485 N.Y.S.2d 510, 474 N.E.2d 1178 (1984); *Ford v. Unity Hospital,* 32 N.Y.2d 464, 346 N.Y.S.2d 238, 299 N.E.2d 659 (1973); *Wen Kroy Realty Co. v. Public Nat. Bank & Trust Co.,* 260 N.Y. 84, 183 N.E. 73 (1933). When the principal acquiesces to an agent's acts which allow it to appear to a third party that the agent possesses actual authority to perform those acts, the principal will be bound. The scope of such authority is determined not only by what the principal actually knows of the agent's acts, but also by what the principal should know if he had exercised ordinary care and prudence. *Hallock v. State of New York,* 64 N.Y.2d 224, 485 N.Y.S.2d 510, 474 N.E.2d 1178 (1984); *Hanover Nat. Bank v. American Dock & Trust Co.,* 148 N.Y. 612, 43 N.E. 72 (1896); *Edwards v. North American Van Lines,* 129 A.D.2d 869, 513 N.Y.S.2d 895 (3rd Dept.1987).

■ Mr. Fontanez characterized Mr. Hernandez as his manager. He entrusted Mr. Hernandez with complete control over the operations of the store. He allowed Mr. Hernandez to have sole and exclusive possession of the blank checks, check register, cancelled checks and bank statements. While it may be true that in the beginning Mr. Fontanez maintained some control over the checking account, he soon relinquished complete control to Mr. Hernandez. Mr. Fontanez testified he was informed by a third party that checks written against the Fontanez Grocery Store account had bounced. Therefore, it is clear the account was still being used even though he was not signing the checks. Further, Mr. Fontanez allowed Mr. Hernandez to have unrestrained freedom to deal with Key Bank. Mr. Hernandez made all the deposits. When there were any problems with the account, Mr. Hernandez, not Mr. Fontanez, would be the one who would meet with Key Bank employees to discuss the problems.

Therefore, it is clear Mr. Fontanez allowed a situation to evolve whereby Key Bank was led to believe Mr. Hernandez had full authority over the checking account. Further, Mr. Fontanez did not take any steps to inform Key Bank that Mr. Hernandez did not have such authority. If Mr. Fontanez had taken the time to review the bank statements and cancelled checks, he would have been able to detect any abuses by his agent and could have prevented any future abuses. The loss in this case must lie with Mr. Fontanez. Therefore, the objection of the debtor to the claim of Key Bank is denied and it is so ordered.